(No. 37914.—)

ERNEST D. MOBLEY *et al.,* Appellees, *vs.* THE CITY OF OTTAWA, Appellant.

*Opinion filed November 26, 1963.*

FREDERICK W. IRION, City Attorney, of Ottawa, for appellant.

JOHN A. BERRY, of Streator, and JACK TRAGER, T. EMMETT WHITE, and ERNEST H. POOL, of Ottawa, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Plaintiffs instituted this declaratory judgment action to have the zoning ordinance of the city of Ottawa declared invalid as applied to their tract running 509 feet east and west on the south side of Norris Drive and extending south 270 feet to Joliet Street. The complaint also alleges the invalidity of the ordinance in its entirety. The circuit court of La Salle County found the ordinance unconstitutional and void insofar as it restricted the north 140 feet of the tract to residential purposes and held that plaintiffs have the right to use that portion for purposes authorized in a local business district. It declared the ordinance valid in its application to the south 130 feet of the tract and dismissed the counts challenging the general validity of the ordinance.

The city appeals from that portion of the decree with respect to the north 140 feet and plaintiffs cross-appeal from the finding of validity as to the south 130 feet.

The tract was used by a piano manufacturer prior to destruction of its large building about 1918. The city purchased it in 1920, cleared the rubble, and it was used for a soft-ball diamond until about 1955. In that year the city took bids both on the basis of A-Residential and C-Local Business zoning. Several bids were submitted, the one from plaintiffs being $36,000 as Class C and $25,000 as Class A, and the latter bid was accepted. The property was at that time zoned A-Residential and had been so zoned continuously since 1941 when the city's zoning ordinance was adopted.

Plaintiffs petitioned for a reclassification of the property from A-Residential to C-Commercial, and upon recommendation of the zoning board, the city council passed an ordinance granting the change. That ordinance was declared invalid by the trial court because it was not adopted by a two-thirds vote of the council and we affirmed. *Mezel v. Mobley*, 21 Ill.2d 20.

Norris Drive, upon which the subject property abuts, is 100 feet wide and is a part of a State and Federal highway. It has four lanes of traffic separated by a median strip, and is a primary heavily travelled highway through Ottawa. The property lies parallel to the main line of the Rock Island Railroad which is approximately 215 feet south of its south line. Most of the area for four blocks west along Norris Drive is used for residential purposes, except for an office building and gasoline station which are nonconforming uses. However to the west-southwest of plaintiffs' tract is a block-long lumber yard and across the street from that are located switch tracks and various sheds on the railroad right of way. Immediately across the street from the subject property is a large grocery or supermarket known as "Rudy's Market". From thence east for about four blocks there are

several public buildings and a tract variously described as recreation area and circus and carnival grounds. Francis Sexton, city engineer prepared an exhibit and testified that from the westerly edge of the property eastward for a distance of 2107 feet, 93% of the frontage on the north side of Norris Drive was used for nonresidential purposes and only 7% for residential. He further testified that 58% of the frontage on the south side of Norris was nonresidential and 42% residential. He expressed the opinion that the highest and best use was commercial. From the photographs in evidence and the testimony of witnesses it is apparent that few new residences have been built in the area recently, and that most of the homes were constructed 40 to 50 or more years ago.

Five valuation witnesses called by plaintiff testified that the highest and best use is for commercial purposes. Newton C. Farr testified as an expert that his opinion was based on existing factors such as conformity with the general use of other property along the street, that the tract is located on a through traffic artery which would attract business, that its area is sufficient to permit adequate business development and that Rudy's Market across the street attracts business and trade to the area, thereby adding materially to the desirability of using the tract for business purposes. He further was of the opinion that under existing conditions the residential property would not suffer any adverse effect. The other four witnesses had similar opinions. Their valuation for residential use varied from $12,000 to $16,000 and for commercial purposes from $65,000 to $87,000.

The defendant called a planning consultant who testified that the highest and best use was residential and fixed 60-foot-lot values at $2400 to $3000 if water and sewer are available. A real-estate broker fixed values at $2500 per 60-foot lot. Oddly, he testified that Rudy's Market across the street did not hurt surrounding values and in fact improved values, but indicated that commercial development

of the subject property might do so. He further stated that the south portion abutting Joliet Street would not be affected by the close proximity of the railroad over which approximately 30 trains per day pass. Three residents of the area indicated that Rudy's Market has caused a traffic increase and that it produced light and noise. The then city attorney who was trying this case took the stand saying he was "impeaching" the testimony of people who testified as to lot values in Ottawa by citing values in a subdivision. A son of one of the members of the city attorney's law firm, who is a real-estate broker, testified that the proposed use would have a "downward" effect on residential property and fixed the valuation of 60-foot lots at $2000 to $2500. Lastly, Philip J. Bailey, the mayor of Ottawa, was called by the city. His home is the second house west of the site of Rudy's Market and is one of the newer homes in the area though more than 20 years old. He purchased it after Rudy's was built for $14,500 and now values it at $16,000. In response to a question as to whether his attitude in this case is purely political, he said no; but he admitted that he had made a public statement at a political meeting prior to his election that he would resist a change in zoning of the Mobley property.

In addition to the foregoing circumstances there are several other things which militate against the city's position. First, it encouraged the use of the property by installing electric lights and converting the site into a public ball park, and by constructing and maintaining rest rooms in an adjacent building to the southeast for use of patrons of the ball park, which uses were unauthorized in a class A-Residential district. Second, when it offered the property for sale "as zoned" and also if zoned commercial, it was in effect offering rezoning at a price without regard to the public welfare. Third, in 1957 the city rezoned the site of Rudy's Market from residential to local business and the

same reasons which may have justified that rezoning apply with equal force to plaintiffs' tract.

The only uses to which this tract has ever been put were a large factory building and a ball park. Enforcement of this restrictive zoning classification imposes a severe hardship, financial and otherwise, upon the plaintiffs. This hardship far outweighs the benefit, if any, to the public. Under such circumstances the zoning restriction is oppressive and void as applied to plaintiffs' property. (*Weitling* v. *County of Du Page,* 26 Ill.2d 196; *County of Lake* v. *MacNeal,* 24 Ill.2d 253.) This applies to the entire tract. While the south part faces a street with more residential use than Norris Drive, it is even closer to the railroad and yard and shed use. No reasonable ground exists for voiding the rezoning of the north part and not the south part of the tract.

In view of our holding it is unnecessary to pass upon plaintiffs' contention that the ordinance is void in its entirety.

The decree of the circuit court of LaSalle County is affirmed as to the north 140 feet of the subject tract and reversed as to the south 130 feet, and the cause is remanded with direction to enter a decree in accordance herewith.

*Affirmed in part and reversed in part and remanded, with directions.*