NORBERT M. LISK, Plaintiff-Appellant, *v.* GEORGE BENJAMIN *et al.*, Defendants-Appellees.

Second District   No. 81-520

Opinion filed March 25, 1982.

Peter F. LoMonaco, of Rawles, Katz & McKeown, Ltd., of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and Rudolph F. Magna, Jr., of Magna, Brown and Hauser, Ltd., of Round Lake (David Weidenfeld, Assistant State's Attorney, of counsel), for appellees.

JUSTICE NASH delivered the opinion of the court:

Petitioner, Norbert M. Lisk, appeals from an order of the circuit court of Lake County dismissing his petition challenging the election of defendant, George Benjamin, to the office of village president of Hainesville. He contends that (1) the trial court considered improper evidence in denying the petition and (2) errors and omissions of the official conducting the election require that it be voided or that petitioner be declared the winner.

An election was conducted by the Lake County clerk on April 7, 1981, to determine the office of village president of Hainesville, and other offices. Petitioner and defendant Benjamin were each candidates for that office. Prior to the election the county clerk's office received applications for absentee ballots from Florence Lisk, Ralph Lisk and James Lisk, who were, respectively, petitioner's daugher-in-law and sons and also from Marvin Rogers, his son-in-law. Each of the applications listed these prospective voters' address as "Rte 1, Box 21B, Grayslake, Illinois." The clerk referred to a street address index kept for that purpose in order to determine the voting precinct represented by the address given, then changed that address to read "121 E. Belvidere Road, Grayslake, Illinois" and noted the voting precinct as "8D."

The street index, however, was in error and the correct precinct for the address listed on the applications for ballot should have been precinct 8A; precinct 8D was, in fact, in the adjoining Village of Grayslake while precinct 8A, where the applicants were alleged to have resided, was in the

Village of Hainesville. As a result of this error ballots to be voted in the Grayslake election, also being held at that time, were sent to the four applicants.

The absentee ballots sent to Florence, Ralph and James Lisk were duly returned to the county clerk with the name "Norbert Lisk" entered as a writein candidate for "Mayor" and were delivered to the Grayslake polling place for precinct 8D where they were counted. The absentee ballot sent to Marvin Rogers was not returned to the county clerk for voting. The canvass of the election for the office of village president of Hainesville determined that petitioner received 33 votes, defendant Benjamin received 36 votes, and Benjamin was declared the winner. The returns of the Grayslake election disclosed that petitioner there received three writein votes for the office of mayor of Grayslake.

Petitioner challenged the Hainesville election on the ground that the three absentee ballots voted in the Grayslake election should be counted in Hainesville and he declared the winner or that a tie resulted; he alternatively alleged that the Hainesville election for the office of village president be declared null and void because of errors by the county clerk in conducting it.

Hearings were held on the petitions at which the ballots cast in both elections, the applications for absentee ballots, the canvass of the elections and the street index used by the county clerk were offered by petitioner and admitted into evidence by the trial court. They had all been in the custody of the clerk until produced in court. Attorney Rudolph Magna, who represented Benjamin at the hearing, apparently noticed a similarity in the handwriting on the three absentee ballots as in his cross-examination of petitioner he inquired:

> "Q. Looking at the ballots in your hand, Group Exhibit Number 13, does that handwriting that appears on those ballots bear any resemblance to the handwriting of your daughter-in-law Florence?
> A. It could be.
> Q. And when you say it could be, you looked at all three of these ballots?
> A. Yes.
> Q. Do you have any personal knowledge of whether or not Florence cast the ballots, those three ballots in Group Exhibit 13?
> A. No, I don't."

On one of the days the hearing was being conducted, but at a time when the other parties were not present, Weidenfeld appeared *ex parte* before the trial judge and requested permission to remove petitioner's exhibits (the applications for ballots and the writein ballots cast) for a hand-writing analysis by an examiner at the Northern Illinois Police Crime Laboratory. His motion was granted and Weidenfeld placed the

exhibits in the custody of Joseph J. Lesk, a document examiner for the crime laboratory. They were returned to court on the next day when the hearing reconvened. Subsequently, Lesk testified to his opinion that the three ballots were written in the same hand and that based upon examples of her handwriting that Florence Lisk was the best suspect for having executed all of them. Lesk also testified that the ballots were in the same condition as when he received them, except for identification marks he had placed upon them.

The trial court found that the examination of the ballots under the court's direction did not cause them to become invalidated, but that it was apparent from the evidence and a look at the ballots they had been voted by the same person and were invalid on that ground. The court further found that the clerk's error in sending the wrong ballots had not affected the outcome of the election under these circumstances as the invalid ballots could not be counted in any event.

An election contest is governed by article 23 of the Election Code (Ill. Rev. Stat. 1979, ch. 46, par. 23—1.1 *et seq.*). Section 23—22 of the Code provides that "[e]vidence may be taken in the same manner and upon like notice as in other civil cases" and, after the hearing provided by section 23—23, the court "shall confirm or annul the election according to the right of the matter * * *." (Ill. Rev. Stat. 1979, ch. 46, par. 23—26.) It has been said that election contests are limited to a determination of the election result. *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 38, 219 N.E.2d 617, 619; *Breslin v. Warren* (1977), 45 Ill. App. 3d 450, 453, 359 N.E.2d 1113, 1114.

■■ Petitioner contends first that the trial court erred in considering evidence of the contents of the three questioned ballots (that each was written in the same hand) as a basis for dismissing the petition. He argues that in an election contest ballots may be received as the best evidence of the results of the election only if they have been preserved from access by unauthorized persons and from tampering, citing *Rogers v. Meade* (1936), 363 Ill. 630, 2 N.E.2d 924, and *Sibley v. Staiger* (1932), 347 Ill. 288, 179 N.E. 877, and as these ballots had been turned over to the assistant State's Attorney and others their evidentiary value was destroyed and the court could look only to the returns of the election as evidence of the results (*Armbrust v. Starkey* (1954), 3 Ill. 2d 131, 133, 119 N.E.2d 910, 911).

The cases relied upon by petitioners are inapposite, as the courts there considered circumstances wherein ballots were not protected from unauthorized access before being received in evidence. In the present case petitioner agrees the ballots were properly protected until after they had been admitted in evidence, but asserts that after these exhibits were withdrawn for testing purposes they lost their status as authentic ballots and may not be considered by the court.

Once ballots are admitted in evidence for counting, the sole question before the court becomes whether those ballots are legal or illegal. (*Wood v. Hartman* (1942), 381 Ill. 474, 480, 45 N.E.2d 864, 867.) The questioned ballots in this case were received into evidence without restriction and became general evidence for the benefit of all parties and petitioner cannot be heard to complain that they were not evidence of the facts therein. (*Dill v. Widman* (1952), 413 Ill. 448, 452, 109 N.E.2d 765, 767; *Wilkinson v. Mullen* (1975), 27 Ill. App. 3d 804, 808, 327 N.E.2d 433, 436.) In judging the competency of the ballots the trial court could consider all facts in evidence tending to prove or disprove the matter and to allow the ballots to be submitted to handwriting analysis at the request of a party. See generally Ill. Rev. Stat. 1979, ch. 51, par. 50.

We note that the *ex parte* hearing of the motion made by the assistant State's Attorney was improper. The trial court should have required that notice be given to the other parties; however, petitioner has failed to establish any prejudice from this oversight or that the outcome below was affected and the error is harmless. *Hartigan v. Robertson* (1980), 87 Ill. App. 3d 732, 739, 409 N.E.2d 366, 371; *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 15, 405 N.E.2d 1376, 1382.

Having determined that the trial court did not err in its consideration of the questioned ballots and their validity, we turn to petitioner's further argument that the admitted error of the county clerk in sending the wrong ballots to the four absentee voters requires that the election be set aside.

■■ Errors or omissions by election officials in carrying out the duties imposed by the Election Code can cause an election to be invalidated. (*Hester v. Kamykowski* (1958), 13 Ill. 2d 481, 485, 150 N.E.2d 196, 199.) Irregularities which do not affect the outcome of the election, however, will not be considered in an election contest. *People v. City of Paris* (1942), 380 Ill. 503, 516, 44 N.E.2d 154, 161.

■■ In this case, one of the erroneous ballots was not voted at all and the evidence established that the other three ballots were cast by a single voter. When a voter has voted more than once in the same election all of his ballots must be rejected (*Widmayer v. Davis* (1907), 231 Ill. 42, 51, 83 N.E. 87, 91), and that consequence necessarily obtains here. The conduct of a voter who cast three ballots, two of them in the names of other persons, may not provide the basis to invalidate the election. Petitioner understandingly does not suggest that voter cast three ballots because of the clerk's error, and would not have done so if the correct ballots had been provided. That voter could at best, if provided with the correct ballot, vote once for petitioner; if so, the result of the election would have been 34 votes for petitioner and 36 for his opponent and would not change the results of the election.

We conclude that as the error by the county clerk in conducting the

election did not affect its outcome, the trial court correctly dismissed the petition challenging the election.

Accordingly, the judgment of the circuit court of Lake County will be affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.