JOSEPH KNOR *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF MADI-
SON *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0367

Opinion filed December 5, 1986.—Rehearing denied January 6, 1987.

Edward T. McCarthy, of Burroughs, Simpson, Hepler, Broom & McCarthy, of Edwardsville, for appellants.

Dan O'Neill, Assistant State's Attorney, of Edwardsville, for appellee County of Madison.

Merle C. Bassett, P.C., of Wood River, for other appellees.

JUSTICE KASSERMAN delivered the opinion of the court:
Plaintiffs, Joseph, Millie, and Phillip Knor, Whitney and Connie

Law, Ernest and Ella Ostendorf, Donald and Marcia Koenig, and Robert and Karen Schriefer, appeal from a judgment of the circuit court of Madison County which allowed defendants, Leo Gieszelmann, Phillip McKinney, and the Edwardsville Gun Club, to retain a special use permit granted by defendant Madison County board. The record indicates the following facts.

On March 8, 1984, defendants Gieszelmann, McKinney, and Edwardsville Gun Club applied for a special use permit to (1) establish a gun club on a 40-acre tract of agricultural land in Pin Oak Township, and (2) allow for the serving of alcoholic beverages on the gun club premises. This 40-acre tract is located within and is a part of a 120-acre tract owned by defendants Gieszelmann and McKinney. The gun club was interested in purchasing the remaining 80 acres at a later time. The land owned by plaintiffs borders the 120-acre tract.

The Madison County zoning board of appeals heard evidence on this application, then issued a recommendation that the special use permit be denied. Subsequently, the Madison County board voted 22 to 2 in favor of granting the special use permit. Plaintiffs then filed an action in the circuit court requesting either administrative review or a declaratory judgment. The following evidence was introduced in the circuit court.

During and apparently prior to 1983, the gun club conducted operations at a location on Dunlap Lake in Madison County. After a court order closed down the operation at Dunlap Lake in October 1983, the gun club sought another location. The gun club offered to buy the instant 40-acre tract from Gieszelmann and McKinney if favorable zoning was obtained.

Gun club president James Peterson testified that the club's primary fund-raising activity was the conduct of registered trap and skeet shoots. Six registered shoots were conducted in 1983, primarily on Sundays. During a registered shoot, the contestants shoot at 100 or 200 targets. Peterson testified that most of the registered shoots previously conducted by the club consisted of 200 targets. The shooting lasted for approximately 2½ to 3 hours. While a registered trap and skeet shoot would have anywhere from 15 to 55 contestants, Peterson was of the opinion that 40 contestants or more would be required for a financially successful shoot. While at Dunlap Lake, the club was normally open on Saturday and Sunday afternoons. When there was not a registered trap shoot, gun club members and guests would meet in groups of 10 to 20 and shoot informally. Peterson stated that it was possible that both formal and informal shooting would increase if the instant property became available. Specifically,

the facility would be open for shooting on summer evenings and holidays.

Madison County Clerk Evelyn Bowles authenticated the record which was before the county board when it considered defendant's request for the instant special use permit. This record, which is part of the record on appeal, did not include the entire proceedings before the zoning board of appeals. The circuit court subsequently refused to consider such record.

Plaintiff Joseph Knor testified that he owns 80 acres of land adjoining the 40 acres the gun club initially wishes to purchase. Mr. Knor testified that the proposed gun club site was planted in soybeans at the time of the circuit court hearing and during the prior three years. He further testified that city water and sewer were unavailable in the area of the proposed gun club and that several wells in the locality had recently gone dry. Mr. Knor was allowed to read into evidence a portion of the zoning board of appeals' recommendation that the special use permit be denied. This portion of the recommendation concluded that the gun club would have an adverse effect on the proposed location (1) due to the lack of adequate public utilities (i.e., sewer, water, and roads) at the proposed location, and (2) because "area residents [would] feel intimidated by the establishment of a gun club and would be in a position whereby the sale and future developments in the area would be hampered." Mr. Knor had testified that he had other residences on his land which he would be willing to sell. The precise location of these residences in relation to the proposed gun club site is unclear from the record.

The circuit court denied Mr. Knor's attempt to testify as to the deleterious effect of the proposed gun club on the value of his property. During his offer of proof on this point, Mr. Knor testified that he used his property for hiking, photographing wildlife, and the quest for solitude. Mr. Knor believed that the establishment of a gun club adjacent to his property would render his property useless for these pursuits.

Plaintiff Donald Koenig testified that his current home is located approximately a quarter to a half mile from the gun club's former site on Dunlap Lake. Mr. Koenig stated that the repetitive noise from the shooting often occurred on weekends and holidays when he wished to use his backyard and that such noise was annoying. Mr. Koenig was of the opinion that the land he owned adjacent to the proposed gun club would be unsuitable for residential subdividing if the gun club located there.

Plaintiff Ernest Ostendorf testified that the property he owns ad-

jacent to the proposed gun club was worth approximately $2,200 to $2,300 an acre at the time of the hearing before the zoning board of appeals. Mr. Ostendorf's attempt to testify as to the value of his land at the time of the hearing before the circuit court was denied.

Plaintiff Whitney Law testified that he owns a 2.43-acre tract of land located within the Gieszelmann-McKinney tract the gun club eventually wishes to purchase in its entirety. Mr. Law testified that he measured from the corner of his house closest to the initial 40-acre tract the gun club wishes to purchase to a lake located on this 40-acre tract. This distance was approximately 400 to 500 feet.

Plaintiff Robert Schriefer testified that several residences in the area of the proposed gun club were not shown on the map submitted at the hearing before the zoning board of appeals. Mr. Schriefer made no reference to the distance from these residences to the proposed gun club. Several photographs Mr. Schriefer took of the area near the proposed gun club prior to the hearing before the zoning board of appeals were admitted into evidence. These photographs show Staunton Road, the primary public access to the proposed gun club. Mr. Schriefer testified that Staunton Road is "breaking up" due to the traffic presently using it. Other photographs purporting to depict the site of the passage to the proposed gun club show that the proposed passage was planted in soybeans.

Defendant Leo Gieszelmann, Jr., testified that he wished to sell the nontillable portion of his farm to the gun club. Mr. Gieszelmann admitted that the land between the lakes on the proposed gun club site was tillable.

An engineer's drawing prepared at defendants' request was admitted into evidence. This drawing shows the distances from the proposed shooting range to residences to be more than 1,000 feet. This drawing apparently measures from the perimeter of the shooting range rather than one particular point within the shooting range.

The circuit court admitted the entire record before the zoning board of appeals into evidence without objection.

In its written decision denying plaintiffs' relief, the circuit court stated that it could not consider the evidence presented before either the zoning board of appeals or the county board. The court refused to consider the evidence presented before the county board because the granting of the special use permit by the county board was a legislative rather than an administrative act. Since it could only consider the evidence presented at the hearing before it and since the evidence before it was inadequate, the circuit court entered judgment for defendants.

On appeal plaintiffs argue that: (1) the circuit court should have resorted to administrative review rather than declaratory judgment, (2) the circuit court erred in not considering the administrative record when it stated that such record would be considered in its determination, (3) the county board violated its own ordinance when it issued the special use permit, and (4) the county board failed to follow required procedures prior to issuing the special use permit.

■ The Madison County Zoning Ordinance provides in pertinent part:

"The [Zoning] Board of Appeals shall be an advisory body to the County Board and final decisions on zoning permits, appeals, interpretations and amendments are vested in the County Board." (Madison County, Ill., Zoning Ordinance sec. 802.2.)

* * *

"After appropriate action by the [Zoning] Board of Appeals, the County Board may, by a majority vote, approve and/or adopt any proposed special use permit, variation or amendment except in the following cases only, which require the favorable action of three-fourths of all members of the County Board:

* * *

(b) In case of written protest of any proposed amendment or special use permit signed and acknowledged by the owners of twenty (20) percent of the frontage proposed to be altered or by the owners of twenty (20) percent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty (20) percent of the frontage directly opposite the frontage proposed to be altered, or twenty (20) percent of any combination of the above categories; ***" (Madison County, Ill., Zoning Ordinance sec. 803.4(b).)

It is only in situations in which a legislative body transfers to an administrative agency the authority to administer an ordinance that administrative review by the courts is a permissible remedy. However, when zoning action is taken by a legislative body and not an administrative body, a declaratory judgment action is the appropriate remedy. *Smith v. County Board* (1980), 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459.

■ Plaintiffs first urge that because the granting of a special use permit is not a major change in zoning such as the legislative act of amending the zoning ordinance, the granting of a special use permit should be subject to administrative review. We do not agree. The ordinance specifically provides that decisions of the zoning board of ap-

peals are advisory only and that all final decisions on zoning matters are vested in the county board. We further note that a three-fourths majority vote of the county board was required to grant the instant special use permit. This greater-than-majority vote was required because a written protest to the special use permit was signed and acknowledged by at least 20% of the adjoining landowners and not because a three-fourths majority vote was required to override the zoning board of appeals' recommendation that the special use permit be denied. We therefore conclude that the zoning board of appeals was not authorized to grant a special use permit; consequently, the granting of the instant special use permit was a legislative rather than an administrative act. Thus, an action for declaratory judgment, rather than administrative review, is the appropriate remedy.

■■ ■ Plaintiffs next urge that the circuit court erred in not considering the entire record before the zoning board of appeals and the county board.

It is well established that transcripts of hearings before the zoning board of appeals or the county board are not admissible in declaratory judgment actions because such procedure would deprive the defendants of their right to have primary or direct evidence presented in open court for assessment and evaluation by the court. (*Smith v. County Board* (1980), 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459.) However, since the entire record before the zoning board of appeals in the instant case was admitted into evidence without objection, it was error for the circuit court to not consider such evidence in its determination. (See *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 242, 309 N.E.2d 763, 772.) Nevertheless, a remand to the circuit court will not be necessary because we will consider such evidence in reviewing the declaratory judgment. Since plaintiffs testified before the zoning board of appeals as to a diminution of their property values if the gun club located nearby, the effect of the circuit court's disallowance of such evidence will not be considered.

■■ ■ The third issue raised by plaintiffs is that the granting of the instant special use permit violates the zoning ordinance in one of the following ways: (1) the distance from the proposed gun club site to neighboring residences was less than the 1,000 feet the ordinance requires for such special use; (2) the construction of a gun club on the proposed site would violate the ordinance since this land would be removed from its primary agricultural use; and (3) since there is no provision in the zoning ordinance for a special use permit allowing the sale of alcoholic beverages in an agricultural district, a special use

permit allowing same is contrary to the ordinance.

We first note that the validity, meaning, or application of a zoning ordinance may be determined in a proceeding for declaratory judgment. E. McQuillen, Municipal Corporations sec. 25.289, at 465 (1986).

In this regard, zoning is a proper exercise of the police power of the State that can be exercised by the legislature or by the municipalities to which the power is delegated. (*People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 188, 157 N.E.2d 33, 35.) A presumption of validity attaches to legislation adopted under the police power and the burden of proving to the contrary is upon the one who asserts the invalidity. While such legislative acts are generally subject to judicial review to determine whether they are related to and reasonably necessary and suitable for the protection of the public health, safety, welfare, or morals, courts will not disturb a police regulation where there is room for a difference of opinion. (*Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515, 198 N.E.2d 326, 332.) In the case at bar, plaintiffs urge that the special use permit in question violates the zoning in at least one of the three specific manners set out above.

■ In construing a zoning ordinance, effect should be given to the intention of the drafters by giving due consideration to the terminology used, its goals and purposes, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 313, 469 N.E.2d 183, 188.) Section 203.3 of the Madison County Zoning Ordinance provides in pertinent part:

"The Agricultural District of Madison County consists of areas where soil, water, vegetal, and topographical resources generally provide conditions well suited to the raising of crops and domestic animals and reflects those areas where agricultural land uses have traditionally existed. The district is designed to prevent the intrusion of non-agricultural land use and development which would hinder agricultural pursuits by reason of congestion on public roads, chemical and biological pollution of air and water resources, soil erosion, and the depletion of natural cover causing excessive runoff of storm water onto and across agricultural land. The district is designed to protect and preserve areas of high agricultural productivity and is intended to preserve conditions suitable to agricultural pursuits." (Madison County, Ill., Zoning Ordinance sec. 203.0.)

Further, section 107.2 provides in pertinent part:

"SITE: A parcel of land consisting of one or more lots or portions thereof which is described by reference to a recorded plat or by metes and bounds.

\* \* \*

SPECIAL USE: This ordinance divides the entire county into zoning districts and in each district there are mutually compatible uses which are permitted. It is recognized, however, that other uses may be necessary or desirable but their potential influence on permitted uses could be harmful. For this reason they are classed as special uses and may be permitted only under certain conditions." (Madison County, Ill., Zoning Ordinance sec. 107.2.)

Additionally, section 203.3 provides in part as follows:

"Special Uses [agricultural district]:

\* \* \*

Golf courses, regulation size, but not including 'par 3' golf courses, commercially operated driving ranges or miniature golf courses; and provided that no club houses or accessory building shall be located nearer than five hundred (500) feet to any dwelling on another zoning lot.

Gun Clubs, if located not nearer than one thousand (1,000) feet to any residence other than that of the owner or lessee of the site and if not so operated as to withdraw the land from its primary agricultural use. \*\*\*" (Madison County, Ill., Zoning Ordinance sec. 203.3.)

Section 203.4 states:

"Permitted Accessory Uses [agricultural district]: Accessory uses clearly associated with and supplementary to the principal use of the lot or tract of land." (Madison County, Ill., Zoning Ordinance sec. 203.4.)

Further, section 203.5 provides:

"Prohibited Uses [agricultural district]:

Vehicles, being automobiles, buses and trucks that do not bear a current set of license plates, or are not in running condition; or are in such a condition that they are inoperable on public streets shall not be permitted.

Junk yards.

Outside storage of goods or materials not in working condition or not intended for use or consumption on the premises.

Manufacturing." Madison County, Ill., Zoning Ordinance sec. 203.5.

■ Plaintiffs' first contention is that the "site" of the proposed gun club is measured from its outer perimeter; consequently, the proposed "site" is within 1,000 feet of a residence in violation of the ordinance. The evidence indicates that the gun club originally plans to buy a 40-acre tract of land, a portion of which will be used as a shooting range. A "site" is defined by the zoning ordinance as "one or more lots or portions thereof." It is therefore apparent that "site" refers to that portion of the 40-acre tract which the gun club plans to use for a shooting range. Since the only evidence before either the zoning board of appeals or the circuit court as to the distance from the proposed shooting range to neighboring residences is the engineer's drawing showing this distance to be more than 1,000 feet, this ordinance requirement was not violated.

Plaintiffs also contend that the proposed gun club violates the zoning ordinance because its facilities will withdraw the land on which they are located from its primary agricultural use. The engineer's report, which was before the zoning board of appeals, states that the proposed gun club's facilities will take three acres of land out of agricultural production. Although the purpose of the agricultural district is to prevent "intrusion" upon existing agricultural area, many land-intensive special uses (*e.g.*, airports, golf courses, mineral mines) may be "necessary or desirable *** under certain conditions." We must therefore conclude that the mere removal of land from cultivation, standing alone, is insufficient to prevent the granting of a special use permit under the ordinance.

Plaintiffs finally contend that the granting of a special use permit allowing the sale of alcoholic beverages at the proposed gun club is contrary to the ordinance because no ordinance provision exists which allows such sales in an agricultural district. We note at the outset that the sale of alcoholic beverages in an agricultural district is not prohibited. Furthermore, although establishments selling alcoholic beverages are not specifically provided for in the ordinance, "accessory uses clearly associated with and supplementary to the principal use of the lot or tract of land" are permitted. In light of the fact that golf courses are allowed "club houses," apparently as an accessory use, allowing the gun club to sell alcoholic beverages in its proposed "club house" is not violative of the zoning ordinance.

■ Finally, plaintiffs urge that certain alleged procedural irregularities render the granting of the special use permit null and void. Specifically, plaintiffs contend that they were unfairly deprived of their rights because (1) the county board failed to consider the entire record before the zoning board of appeals prior to granting the special

use permit and (2) plaintiffs were not given adequate notice of the special use permit application prior to the hearing before the zoning board of appeals.

The zoning ordinance provides that the county board shall not act on any application for a special use permit until a written report concerning such application has been made available to the county board, consisting of a finding of fact and a recommendation of the zoning board of appeals. (Madison County, Ill., Zoning Ordinance sec. 803.3.) While verbatim transcripts of the hearing before the zoning board of appeals were not available to the county board when it reached its decision, it did have the written report mandated by the ordinance before it. Since there is no requirement that any specific procedure as to consideration of evidence be followed by a local legislative body prior to the granting of a special use permit and since the county board adhered to its own established procedure, we conclude that the lack of a complete record of proceedings before the zoning board of appeals did not unfairly prejudice plaintiffs. See *Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 166 N.E.2d 601.

■■■ Although plaintiffs may not have been given proper notice of the special use permit application, they ably presented their opposition to it before the zoning board of appeals, the county board, and the circuit court. As plaintiffs have failed to establish any prejudice due to the alleged lack of proper notice, any resulting error was harmless. *Lisk v. Benjamin* (1982), 105 Ill. App. 3d 51, 55, 433 N.E.2d 1154, 1157.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.