CHARLES PEET, SR., *et al.*, Plaintiffs-Appellees, v. BOUIE CONSTRUC-
TION, INC., Defendant-Appellant.

Third District   No. 3—93—0808

Opinion filed December 20, 1994.

STOUDER, J., dissenting.

Pamela Gorcowski, of Rooks, Pitts & Poust, of Joliet (Robert R. Gorbold, of counsel), for appellant.

James T. Bradley & Associates, of Joliet (James T. Bradley, of counsel), for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, Charles Peet, Sr., Burton Peet, Emma Peet, Henry Nations, Myrna Nations, and Gladys Proctor, brought an action pursuant to section 5—12017 of the Counties Code (55 ILCS 5/5—12017 (West 1992)), seeking injunctive relief against the defendant, Bouie Construction, Inc. The plaintiffs alleged that the defendant was violating the applicable zoning in its use of its property. Following a bench trial, the court enjoined the defendant from conducting the complained-of activities. We affirm.

The defendant is the owner of three contiguous parcels of land. One parcel was zoned C-4 (highway commercial) at the time the defendant acquired it and has remained so. The other parcels were zoned R-3 (single-family residence) at the time the defendant acquired them. The plaintiffs are the owners of properties that are all zoned residential and either adjoin portions of the defendant's land or are in the vicinity of it.

Elijah Bouie, the owner of Bouie Construction, described his business as that of a subcontractor. The majority of his work involves concrete road paving. In 1986, Bouie moved the offices of Bouie Construction into a building on the property zoned commercial and stored some equipment in a separate building on that same property. Beginning in late 1991 or early 1992, the defendant began to expand in terms of the number of its employees, the type and size of its equipment, and the volume of its business. By 1992, the defendant had four or five 18-wheel dump body trailers and diesel tractors to pull them, two backhoes, a water truck, mobile diesel refueling tanks, a 1,000-gallon diesel fuel tank, concrete road building forms, a tar tanker truck, a white panel delivery truck, eight pick-up trucks, three concrete saws, and four large yellow pieces of GOMACO road building equipment. Many of these pieces of equipment were stored on the parcels zoned residential as well as on the parcel zoned highway commercial. At times, the defendant also rented additional construction equipment and had also stored steel rebar and mesh as well as concrete forms and converted fuel tanks at this location.

Testimony on behalf of the plaintiffs indicated that in general the diesel trucks and tractors would be started each morning between 5:30 and 7 a.m., although start times as early as 1:30 a.m. had been noted. In the winter, each truck or tractor would warm up at idle for 20 to 30 minutes. This idling could also be heard at other times of the day as the trucks moved back and forth between the of-

fice and the construction site. Engine work on the trucks was performed with the use of pneumatic tools. The road building equipment was cleaned by using high pressure steam and water. The 18-wheel dump bodies were cleaned by elevating the bodies 20 feet upward and banging on the floors with metal sledge hammers or shovels to loosen the dirt which was then washed away with high pressure sprayers. Diesel smoke and fumes from the property caused neighboring residents to seek refuge indoors.

After the plaintiffs complained to the Will County zoning authorities about the defendant's ongoing land uses, the defendant filed a petition for rezoning. In the petition, the defendant requested that the residential parcels be rezoned to C-3 (general business) with a special use permit for outdoor storage and a variance on the side yard lot line. The defendant stated it wished to use the property for a truck terminal and offices for a construction business with an area for maintenance of trucks. The defendant also stated it wished to use the property for outdoor storage of vehicles, construction materials, and forms. The plaintiffs opposed the rezoning petition. They argued that the uses to which the defendant sought to put the land were industrial uses, not commercial uses. The Planning and Zoning Commission of Will County (Zoning Commission) recommended that the County Board (Board) grant the defendant's petition. The Board did so, and the plaintiffs subsequently filed suit.

In its written judgment order, the trial court found that the defendant had been and was still using the parcels for the uses it described in its rezoning petition. The court also found that the defendant's uses would diminish the value of the plaintiffs' property. Further, the court concluded that the defendant's uses were not "limited industrial in nature" at all. Instead, the court found the uses were of the type properly located only in the I-3 industrial zoning classification and were not any of the uses listed as eligible special uses in either a C-3 or C-4 zoning district. The court permanently enjoined the defendant from conducting any truck terminal or contractor's yard uses on the parcels, from conducting any outdoor storage or operating any outdoor storage of the truck terminal or concrete road building equipment on the parcels, and from conducting or operating any repairing, cleaning, fueling, maintaining, mobilizing, storage of truck terminal and contractor road building or construction vehicles and equipment on the parcels.

The sole issue on appeal is whether the trial court erred in determining that the defendant was violating the Will County zoning ordinance.

The Will County zoning ordinance provides for many different

zoning classifications, including general business (C-3), highway commercial (C-4), and intensive industrial (I-3). Permitted uses in C-3 districts include farm and garden supply stores, day care centers, and cartage, express or delivery systems. (Will County, Ill., Zoning Ordinance § 5.3—3 (1991) (hereafter Ordinance).) Special uses in C-3 districts include those uses that are "similar and compatible" to the permitted uses, such as drive-in theaters, hotels, liquor stores and taverns. (Ordinance § 5.3—4 (1991).) C-4 zoning allows motor vehicle sales and repairs, antique shops, and towing services. (Ordinance § 5.4—3 (1991).) Permitted uses under I-3 zoning include cement block manufacturing, truck terminals and railroad yards. Ordinance § 6.3—3 (1991).

In the case at bar, the defendant, by his own admission, was operating a truck terminal. That use is specifically set forth as a permitted use under I-3 zoning. The zoning commission and county board had previously recognized that I-3 zoned uses would be disturbing to neighboring residents and had determined that such uses should be segregated from residential districts. (See Ordinance § 6.3—1 (1991) (the purpose of I-3 zoning is to "provide lands for *** activities *** whose external effects will be felt to some degree by surrounding districts").) Moreover, this use is not specifically enumerated as a special use under C-3 zoning, nor is it "similar and compatible" to the permitted uses under either C-3 or C-4 zoning.

The defendant argues that the Board is the final arbiter of whether the proposed use fits within the land's zoning. It contends that as long as the Board knew what activities were going to be carried on and determined that those activities were within C-3 zoning with a special use permit, we are precluded from determining whether the defendant's use violates the ordinance. Carrying the defendant's argument to its logical conclusion would mean that the Board would be both legislature and judiciary. We disagree. It is not the petition, nor even the decision of the Board, which restricts the uses to which the defendant may put his property. It is the zoning ordinance which provides those restrictions. The power to enact the ordinance was solely the province of the Board; the power to construe the ordinance is the court's. See *Fergus v. Marks* (1926), 321 Ill. 510, 152 N.E. 557; *Palella v. Leyden Family Service & Mental Health Center* (1980), 79 Ill. 2d 493, 499, 404 N.E.2d 228, 231 ("[a] legislative body *** is without power to say how the judiciary shall construe a legislative enactment").

■ The defendant apparently believes that the granting of the special use permit by the Board allows any type of activity upon the land as long as that activity is disclosed in the process of seeking the

rezoning and special use permit. If the zoning ordinance had listed the permitted uses available for each classification and then provided that other uses were allowed with a special use permit, then we would agree. However, the ordinance in question here clearly limits those uses allowable with a special use permit by requiring that the uses be "similar and compatible" with the permitted uses. In the case at bar, the defendant's use is not "similar and compatible" to the permitted uses of C-3-zoned property.

■ Finally, the defendant argues that the plaintiffs have not filed the appropriate action. It contends that the plaintiffs must sue the Board for illegally granting the defendant's petition for rezoning. Again, we cannot agree. Section 5—12017 of the Counties Code provides:

"In case any *** land is used in violation of *** any [zoning] ordinance *** the proper authorities of the county, or any person the value or use of whose property is or may be affected by such violation *** may institute any appropriate action *** to prevent such unlawful *** use ***." (55 ILCS 5/5—12017 (West 1992).)

We must give the language of the statute its plain and ordinary meaning. (*Henry v. St. John's Hospital* (1990), 138 Ill. 2d 533, 563 N.E.2d 410.) In the case at bar, the plaintiffs are persons the value of whose land is being affected by the defendant's allegedly illegal use of his property. Their action against him is clearly of the kind contemplated by section 5—12017. While we are mindful that section 5—12017 actions are not usually brought after the defendant has sought and received a rezoning of his property in an effort to address the plaintiffs' concerns, we find no language in this section to preclude such an action.

■ Although the defendant raises three other issues in its brief, it fails to cite authority to support its arguments on two of these issues and cites only one case, which it then claims is distinguishable, with regard to the third issue. It is well settled that a reviewing court is not a depository into which the appellant may dump the burden of research and argument. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 457 N.E.2d 85.) The court may thus disregard issues raised by the appellant which are not supported by relevant authority. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 515 N.E.2d 1222.) Accordingly, we reject these arguments.

In summary, we find that the trial court correctly concluded that the activities conducted by the defendant are a violation of the zoning ordinance of Will County. Therefore, we hold that the trial court did not err in enjoining the defendant from conducting such activities on the property in question.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY, J., concurs.

JUSTICE STOUDER, dissenting:
Respectfully, I must dissent.

My colleagues have missed entirely the threshold issue in this case and have misconstrued the applicable statute. For these reasons, I believe the disposition is erroneous and I cannot concur.

An initial problem with the majority's disposition is that it does not address the main point the defendant raised on appeal. By stating that "[t]he sole issue on appeal is whether the trial court erred in determining that the defendant was violating the Will County zoning ordinance," the majority does a disservice to what the defendant has argued. (268 Ill. App. 3d at 20.) The defendant's principal argument is that the trial court exceeded its jurisdiction and statutory authority in granting an injunction to plaintiffs because the court ignored the specific uses permitted under the special use permit issued by Will County and determined that the special use permit was beyond the scope of special uses permitted in a C-3 zoning district. Rather than addressing this argument, the majority merely repeats the trial court's analysis. The problem with taking such a position is that defendant argues that there is an inherent flaw in the trial court's reasoning. Thus, by repeating the trial court's analysis, the majority ignores the defendant's argument.

Further, the majority does not really address what it claims to be the issue. The majority claims that the sole issue is whether the defendant was violating the Will County zoning ordinance. However, the entire analysis that follows is a *non sequitur*. Rather than demonstrating that the defendant is in violation of the zoning, the majority concludes that defendant should not have been issued a special use permit because his uses are industrial rather than commercial in nature. For whatever reason, the majority fails to recognize that the zoning *includes a special use permit*. Therefore, the relevant inquiry is whether the defendant was in violation of the special use permit.

The majority does not address how the defendant is in violation of the special use permit. Section 5—12017 authorizes the circuit court to grant relief only if the applicable ordinance, resolution or regulation is being violated by the defendant. Here, the defendant obtained a special use permit along with the C-3 rezoning. Therefore, the court should only have considered whether the C-3 zoning with

the special use permit was being violated. Instead, the court found that the defendant's uses were not permissible special uses in an area zoned C-3. Such a finding challenges the action of the county zoning board and is not permissible under the plain language of this statute. The zoning board granted the defendant a special use permit for exactly the activities that the court enjoined the defendant from carrying out.

The majority apparently bases its disposition on its construction of section 5—12017. One statement of the majority's with which I wholeheartedly agree is that we must give the language of the statute its plain and ordinary meaning. However, I believe that a simple reading of the statute shows that it only applies if the person *using* the property is in violation of the zoning. The statute is not directed at the actions of zoning officials, but at those who use the property.

A confusing comment my colleagues make in construing the statute is that they can find no language in the statute to preclude an action brought after the defendant has sought and received a rezoning of his property. I find that language to be in the first sentence. After the defendant obtains a rezoning of the property to allow for his requested uses, how can he be in violation of the zoning? Here, the defendant was given a special use permit to carry out exactly the activities the trial court enjoined him from doing. The only way he can be in violation of the zoning is if he is in violation of the special use permit. The trial court found, and the majority concedes, that defendant is still using the property for the exact uses he disclosed to the zoning officials in his rezoning petition. Thus, it is not surprising that the majority ignores the proper inquiry—whether the defendant was in violation of the special use permit.

Finally, even if the majority's interpretation of the statute is correct—that it can be used to attack the actions of zoning officials—the plaintiffs did not bring that action. The county was not made a party to this suit. The court's finding that the defendant's uses were not permitted under C-3 zoning is impermissible because it allows the plaintiffs to collaterally attack the action of the zoning board. Again, the defendant's argument in this regard is compelling, but the majority does not respond to what the defendant argued. The majority claims that the defendant argues (1) that the board is the final arbiter of whether the proposed use fits within the land's zoning; (2) that as long as the Board knew what activities were going to be carried on and determined that those activities were within the C-3 zoning with a special use permit, we are precluded from determining whether the defendant's use violates the ordinance; and (3) that the board can be both legislature and judiciary.

The defendant did not make any of these arguments. What the defendant argued was that to attack the action of the zoning board, the plaintiffs needed to bring an action against the county. The defendant pointed out that the procedure for challenging the granting of a special use permit can be found in both *York v. Village of Wilmette* (1986), 148 Ill. App. 3d 108, 498 N.E.2d 712, and *Knor v. County of Madison* (1986), 151 Ill. App. 3d 767, 502 N.E.2d 1063. The plaintiffs did not follow this procedure, but rather sought to collaterally attack the action of the zoning board in a suit against Bouie Construction. The defendant also pointed out that it was held in *La Salle National Bank v. The Thresholds* (1975), 27 Ill. App. 3d 635, 327 N.E.2d 22, that the municipality is a necessary party to challenge the validity of a zoning ordinance. The majority addresses none of these arguments, but rather states that the defendant's argument would mean that the Board can be both legislature and judiciary. What the defendant *correctly* argued was that judicial review of the Board's action must come in an action against the county. The majority obviously knows that the courts hear appeals in zoning cases all the time. What the court cannot do is review the actions of the zoning board in a suit against a private landowner, under a statute that allows a cause of action if the party *using* the property is in violation of the zoning.

The unfairness of the majority's decision to the defendant cannot be overstated. The defendant has followed all proper procedures in obtaining a rezoning of his property. He sought a rezoning of the property and special use permit that would allow him to carry out certain activities on the property. The zoning board granted the rezoning petition and gave him a special use permit to carry out those very uses. Then, the plaintiffs were able to obtain an injunction against him under a statute that only applies if a landowner is in violation of the zoning. The defendant cannot be in violation of the zoning because the zoning includes a special use permit that allows him to carry out the very activities the court enjoined him from doing. The majority has only been able to demonstrate that perhaps the special use permit should not have been granted. That conclusion, nevertheless, only demonstrates fault on the part of the county, not on the part of the defendant.

In sum, I find that the majority's disposition answers all but the most important issue—defendant's argument that the trial court exceeded its jurisdiction and statutory authority in finding that defendant's uses were not permissible in C-3 zoning. The majority adopts the trial court's analysis without responding to defendant's argument. Further, I find that the majority has misconstrued the

defendant's arguments regarding why the proper suit had to be one against the county. This is a case in which I believe our only choice under the law is to reverse. Because the majority did not make that choice, I dissent.