(No. 35916.—)
ARNOLD LIEBLING, Appellee, *vs.* THE VILLAGE OF DEERFIELD, Appellant.

*Opinion filed January 20, 1961.*

Thomas A. Matthews, and Byron S. Matthews, both of Chicago, (Samuel T. Lawton, Jr., of Chicago, of counsel,) for appellant.

Arnold L. Liebling, of Chicago, and Paul C. Behanna, of Highland Park, (Gerald M. Chapman, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

This is an action attacking the constitutionality of the zoning ordinance of the village of Deerfield as applied to a 17-acre tract owned by plaintiff. The trial court entered

a decree declaring the ordinance invalid and enjoining the village from enforcing its restrictions against the tract. Upon execution of the statutory certificate, the village appealed directly to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75(1)(c).

The 1953 zoning ordinance classified the tract as R-1 and restricted it to single family use with a minimum lot size of 20,000 square feet and minimum house area of 1450 square feet. Under the ordinance, requests for amendments are referred to the local plan commission and petitions for variation are heard by the local zoning board of appeals. Recommendations are made by the respective boards, and variations, like amendments, may be granted only by ordinances of the village board.

The plaintiff applied for an amendment to reclassify the tract as an R-4 district, which permits lot sizes of 9000 square feet and house areas of 1350 square feet. A public hearing was held by the local plan commission which recommended against the change and the village board denied the relief. This suit followed.

At the outset, we must consider the contention of the defendant village that the plaintiff has failed to exhaust his administrative remedies, because he had not also sought a variation from the terms of the ordinance.

We think this contention is answered by *Sinclair Pipe Line Co.* v. *Village of Richton Park,* 19 Ill.2d 370. It was there pointed out that the County Zoning Enabling Act allows use variations, as does the zoning act for cities and villages. (Ill. Rev. Stat. 1959, chap. 24, pars. 73—1 to 73—13.) It was said in that case, at p. 373: "Zoning regulations may be varied, however, only in harmony with their general purpose when 'practical difficulties or particular hardship' makes enforcement of the 'strict letter' of existing restrictions unreasonable." It was further pointed out that the function of variations is to provide a flexible method for relaxing the rigid requirements of an ordinance in cases of

individual need, and not to work major changes in the zoning plan.

Where, as here, it is proposed to double the intensity of use of a tract, a substantial change in the community's zoning plan is contemplated. We conclude that the plaintiff sought the appropriate local remedy, and having been denied relief, he may have access to the courts without also making application for a variation. Whether the denial of that relief was proper is the next question raised by this record.

The 17-acre tract in question is roughly a triangle, the west and south sides of which form a right angle. The northeast or hypotenuse side follows the curve of a branch of the Chicago river and is referred to as a drainage ditch. The tract is unimproved except for a sanitary sewer along the northeast side. It lies on the eastern border and within the boundaries of the village of Deerfield. The village of Highland Park abuts on the eastern boundary of the drainage ditch. A large unplatted area known as the Ramsey tract abuts on the west side of the 17 acres and is divided into homesites of 1/2 to 3 acres each. About 36 large homes have been erected thereon. Three private undedicated thoroughfares traverse the Ramsey tract but do not run up to the 17-acre tract. The property to the south is unimproved. The tract is therefore entirely cut off from the village of Deerfield and the only access to a public street is over an old wooden nonvehicular bridge across the drainage ditch onto Westgate Terrace Road in Highland Park.

The Ramsey tract to the west and the undeveloped land to the south are also zoned R-1. The subdivisions lying west, north and south of the west half of the Ramsey tract and those directly across the drainage ditch in Highland Park, however, do not have the area or density restrictions here complained of.

This case does not pose the usual situation where the value of the undeveloped land is much higher if the restrictions are lowered. In fact, the plaintiff testified that he had been

offered $50,000 for it, and the same value was placed on it if the property were zoned as plaintiff desired. The controversy centers around the cost of development of the tract.

Under the restrictions of R-1 use, including compliance with the ordinances of the village as to street width and construction requirements, only 20 homesites would be available, while the classification sought would permit construction of approximately 42 homes. Plaintiff's evidence indicated that the cost of pavements, sewer, water and the like would be approximately $138,530, and the two bridges $40,000 each, making a total of $218,500. Thus, the improvement cost would amount to almost $11,000 per bare lot for 20 homes. These homes would have to sell for about $42,000. If 42 homes were permitted the homes could be sold for about $25,000.

There was considerable difference of opinion as to the salability of homes in the $40,000 to $42,000 range. Defendant produced three real-estate dealers who testified that there is an active market for homes on sites of 20,000 square feet or more and costing about $42,000 in the Deerfield area. Plaintiff and four other real-estate developers concluded that homes on the subject tract would not be sold for $40,000 or more.

There is also a conflict in the testimony with regard to the effect that a change in the zoning ordinance would have upon neighboring property. Defendants' three real-estate brokers testified that in their opinion the market value of the large homes in the Ramsey tract would be lowered by the construction of smaller homes on smaller sites in the subject tract. One of plaintiff's witnesses thought the building of small homes would increase the value of homes in the Ramsey tract, while another thought they would have little effect on the value of the larger homes.

Plaintiff argues that the present zoning classification destroys the functional use of his property and in doing so destroys its value, since he cannot economically proceed with

its development. He says that he is entitled to construct the larger number of homes and thereby recover the value of the land, his cost of development and a normal profit.

A number of cases from foreign jurisdictions have been cited on the right of municipalities to fix density standards and regulate the area or bulk of houses. We think it unnecessary to go into that controversial field and that this case can and should be resolved upon more basic and elementary principles.

It has long been established that zoning classifications must bear some real and substantial relationship to the public welfare, health or safety; and where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of the police power exists. *Atkins* v. *County of Cook,* 18 Ill.2d 287; *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40.

Here we have a tract in an area, except for the Ramsey land, which has been developed on lots substantially less than 20,000 square feet. It has no access to the remainder of the village except by private lanes, necessitating the construction of two expensive bridges. The cost of development because of its peculiar location would run the cost of the lots to more than 25% of the retail price of the relatively expensive homes, with no assurance that they could be sold if built. We reach the inescapable conclusion that there is no substantial gain to the public in keeping this large tract an undeveloped waste land, and that there is a real hardship imposed upon the owner.

It was the conclusion of the master and chancellor that the subject premises could not be economically developed as a subdivision under an R-1 zoning classification and that the public welfare does not require the restriction.

We agree with that conclusion. The decree is accordingly affirmed.

*Decree affirmed.*