(No. 36649.— )

THE COUNTY OF LAKE *et al.*, Appellants, *vs.* ROBERT B. MACNEAL *et al.*, Appellees.

*Opinion filed March 23, 1962.*

Bruno W. Stanczak, State's Attorney, of Waukegan, (Stanley Grosshandler, of counsel,) for appellant the County of Lake, and Earl J. Wasneski, of Waukegan, for appellant Wooster Lake Improvement Association.

Ross, McGowan & O'Keefe, of Chicago, and Beaubien, Beaubien & Yager, of Waukegan, (Richard F. Babcock, Philip W. Yager and Fred P. Bosselman, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This action was brought in the circuit court of Lake County by plaintiff, the county of Lake, against Robert B. Mac Neal and his wife, owners of two adjoining tracts of land, (referred to herein as parcel 1 and parcel 2,) to enjoin them from violating the county zoning ordinance adopted in 1939. For defense, the defendants pleaded a legal nonconforming use as to parcel 1, and that the ordinance, as it applied to parcel 2, is unconstitutional and void. These allegations were denied by plaintiff's reply. In addition, defendants filed a counterclaim praying that plaintiff be enjoined from enforcing the ordinance against their property. This direct appeal, properly certified to us by the trial court, is from a decree deciding the issues in favor of defendants.

The property involved is located on and back from the shore of Wooster Lake, a small secluded lake with a circumference of one and one-half miles. Both parcels lie in an R-4 Residential District, a zoning classification which limits their use to single-family residence uses. Parcel 1, consisting of about 8¾ acres, (half in-shore and half off-shore,) was purchased by defendants from Louis Bosworth in 1952. Bosworth had owned the property for 11 years and during his occupancy the land was used for his home, the rental of two cottages, boat rental and for a small picnic grove with two or three picnic tables. It is undisputed that the parcel was used for the same purposes both prior to and after the adoption of the zoning ordinance. And while it was urged below that such nonconforming use was abandoned after the death of Bosworth's wife, that theory has not been pursued here and is deemed to be waived.

Subsequent to their acquisition of the parcel, the defendants expanded the useable area by digging a channel along the southerly edge and using the dirt obtained to fill in swampy portions. They also converted a two-car garage into a lunch and refreshment stand, did away with outdoor

toilet facilities and modernized the cottages and residence thereon, and thereafter used the property for a picnic grove and beach, rental of cottages and boat rental.

In February, 1956, plaintiff filed a complaint for an injunction against defendants alleging that they were operating a business in a residential district in violation of the ordinance, that they had expanded the business in violation of the ordinance provisions relating to nonconforming uses, and that notices and orders had been given defendants to discontinue the operation of their business. After hearing testimony and argument, such complaint was dismissed by the circuit court for want of equity. In the instant case, a special master found that the prior proceeding established a legal nonconforming use on parcel 1 and that use of the parcel at the time of this suit, compared with the use being made at the time of prior adjudication, was not an unlawful expansion of the nonconforming use. The chancellor concurred in the findings of the master and entered a decree stating that the former decree was *res judicata* as to the right of defendants "to conduct a recreational resort, including a picnic grove, fishing and restaurant without limitation as to the number of facilities located thereon on 'Parcel I.' "

Plaintiff does not contest the finding of *res judicata* but urges that the decree is too broad in that the language "without limitation as to the number of facilities" will restrict the county from all future regulation of the nonconforming use. We cannot agree that this is so. Manifestly, the decree cannot be construed as depriving plaintiff of the regulatory powers over nonconforming uses reserved in the ordinance, nor could it prohibit such reasonable future regulation as the public health, safety, welfare or morals might require. Further, the controverted language of the decree obviously refers only to the intensity of the use of parcel 1 as a recreational area, and in the ordinance before us there is no provision against an increase in intensity of a nonconforming use. It may be agreed that one of the functions of zoning

is to prevent an undue concentration of people or a particular use in one area, but, as was aptly stated in *People ex rel. Delgado* v. *Morris,* 334 Ill. App. 557, 567, "merely because an area has been zoned does not justify a court in judicially legislating away the property rights granted to non-conforming property owners under the zoning law, in the absence of a specific restriction in the ordinance against any increase in intensity of use." Here, it does not appear that the decree entered deprives plaintiff of any of the regulatory powers it had reserved over nonconforming uses in its ordinance. Cf. *Dube* v. *City of Chicago,* 7 Ill.2d 313; *Federal Electric Co.* v. *Zoning Board of Appeals,* 398 Ill. 142; *Village of Round Lake Park* v. *Dice,* 6 Ill. App. 2d 408; *People* v. *Ferris,* 18 Ill. App. 2d 346.

Turning to parcel 2, the undisputed facts show that it was purchased by defendants in 1957, shortly after the order was entered confirming a legal nonconforming use of parcel 1. This parcel, which abuts on parcel 1, consists of about 18 acres, (11 out of the water and 7 in the lake,) and has a lake frontage of about 600 feet. Prior to its purchase by defendants it had been used solely for residential purposes. After its acquisition defendants filled in a slough area that had been used for dumping garbage and cans, then commenced using the parcel in conjunction with the recreation business conducted on parcel 1. In this regard, the record shows that parcel was used for an automobile parking lot, that picnic tables have been placed thereon, and that people use the beach for swimming and boating activities. It is unquestioned that defendants began making this use of parcel 2 without ever having applied to the local authorities for either rezoning or variance from the existing residential classification.

Upon the complaint of other property owners in the area, and after a public meeting had failed to produce a peaceful settlement, the plaintiff initiated this action to enjoin the ordinance violation. A group known as the Wooster Lake

Improvement Association was permitted to intervene below, and has likewise filed a brief in this court seeking reversal of the decree.

Although it had joined issue on the validity of the ordinance by its pleadings, the plaintiff, relying upon our decision in *Bright* v. *City of Evanston,* 10 Ill.2d 178, took the position when the hearing started before the master that the validity of the ordinance as it applied to parcel 2 could not be challenged in this proceeding because defendants had not exhausted their administrative remedies to secure relief from the operation of the ordinance. On this basis, it was asserted the master could not properly hear any evidence proffered by defendants to establish the invalidity of the ordinance. As opposed to plaintiff's position, defendants contended that the rule of the *Bright* case, requiring an exhaustion of administrative remedies, does not apply where the litigation is started by the public body against the property owner or, that if it does apply, the plaintiff here waived the rule by joining issue as to the validity of the ordinance in its pleadings. The master, subject to plaintiff's objection, permitted defendants to introduce their evidence relating to invalidity but, at the conclusion of the hearing, applied the *Bright* rule to hold that no decision could be made on the merits, inasmuch as defendants had not exhausted their administrative remedies. Accordingly, the master recommended that an injunction should issue restraining defendants from violating the ordinance.

Upon consideration of exceptions filed to the master's report the chancellor disagreed and found, first, that application for local relief would be a useless act where an action is brought by the local authorities to enforce the zoning ordinance; second, that exhaustion of administrative remedies is not a prerequisite to the raising of a defense of the invalidity of the zoning ordinance as it applies to a certain property, particularly where, as in this case, the local authority did not attack such defense but, instead, joined is-

sue and permitted the cause to go to a trial on the merits. Having made these findings, the chancellor further found from the proof adduced before the master that the ordinance, as applied to parcel 2, was arbitrary and unreasonable, and without substantial relation to the public health, safety, welfare, and morals. In accordance with these findings, he entered a decree enjoining the enforcement of the ordinance against parcel 2. The divergent views as to the scope and application of the *Bright* rule shape the first issue presented for determination.

The rule promulgated in *Bright* v. *City of Evanston,* 10 Ill.2d 178, (where the action was initiated by a property owner for a declaratory judgment,) is simply that before a property owner can go to court and challenge the validity of a zoning ordinance as it applies to his property, he must first have made an effort to obtain local relief when available. In contending that the same rule applies where the property owner is the defendant to an action by the local authority to enforce its ordinance, plaintiff first reasons that the *Bright* rule is jurisdictional or quasi-jurisdictional. This premise is not true, nor has the rule been so construed since its adoption. (See *e.g., City of Loves Park* v. *Woodward Governor Co.,* 14 Ill.2d 623; *County of Cook* v. *Glasstex Co.* 16 Ill.2d 72.) The *Bright* rule did not stem from legislative or constitutional command, but is no more than an expression of judicial policy prompted by the circumstance that zoning is legislative and administrative in nature, not judicial, and which is aimed at providing the local authority an opportunity to correct error and to settle disputes locally before there is judicial intervention. (See: *Bright* v. *City of Evanston,* 10 Ill.2d 178, 185; *Herman* v. *Village of Hillside,* 15 Ill.2d 396, 408.) And whether the rule should be extended to defendant-owners, as well as to those who are plaintiffs, is again a matter of policy, not one of jurisdiction.

Although there is authority that the rule of exhaustion of administrative remedies has application whether the va-

lidity of a zoning ordinance is raised by a defendant or a moving party, (*People* v. *Calvar Corp.* 286 N.Y. 419, 36 N.E.2d 644; *Provo City* v. *Claudin,* 91 Utah 60, 63 P.2d 570,) there is at the same time the sound principle, based upon the assumption that one may not be held civilly or criminally liable for violating an invalid ordinance, that a proceeding for the violation of a municipal regulation is subject to any defense which will exonerate the defendant from liability, including a defense of the invalidity of the ordinance. (See: 10 I.L.P., Cities & Villages, sec. 1194, *cf.* *Smith* v. *United States,* (1st cir.) 199 F.2d 377.) Indeed, as one author has observed, "the tradition is deeply imbedded that * * * statutes may be challenged by resisting enforcement." Davis, Administrative Law Treatise, vol. 3, sec. 23.07 p. 320.

For our part, we believe there are substantial differences between a property owner who is the moving party in an action to declare an ordinance invalid as to his property, and one who is summoned into court and charged with illegally violating the ordinance. Whereas, in the first instance, it is the view that zoning litigation should not be initiated until the local authority has a chance to correct the errors that may have occurred in broad comprehensive ordinances, in the latter instance the very act of filing a complaint reflects a judgment on the part of the local authority that, as to the property concerned, they see no particular hardship and no necessity to correct the zoning regulation. To compel a property owner to first seek local relief in the face of the demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice. So long as local authorities institute an action, a defendant should be entitled to defend on the ground of the invalidity of the ordinance and to have the issue determined. If it were to be otherwise, the result could be that judicial ma-

chinery would be used to enforce an ordinance that is unconstitutional.

Plaintiff argues that any refusal to extend the *Bright* rule to defending property owners will be an invitation to the unscrupulous to violate zoning regulations. However, such an *ad terrorem* appeal does not withstand either logical or historical examination. The alleged violation of the zoning ordinance in this case primarily involves a use of open land for recreation purposes. Most zoning litigation, to the contrary, involves proposed substantial investments in and improvements to real estate. In view of the judicial power to preserve the integrity of a zoning ordinance, by mandatory injunction if necessary, we do not foresee that money will be invested or properties substantially altered without first legally testing the zoning ordinance. We conclude that the court below correctly determined that the *Bright* rule did not extend to the defendants in this case.

Our conclusion makes it necessary to consider the further issue of whether the residential classification as applied to parcel 2 is arbitrary and unreasonable, or whether it does in fact bear a rational relation to the public health, safety, welfare or morals. Where such a relation does not exist a county cannot, under the guise of a zoning regulation, either confiscate the property or inflict substantial financial injury upon the owner. (*Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200.) Each case must be decided upon its own facts and circumstances and, in determining if the required relationship to public health, safety, welfare or morals exists, factors to be considered are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the gain to the public as compared with the hardship imposed upon the individual property owner. Zoning laws that result in relatively little gain to the public while inflicting serious loss on the property owner cannot be sustained. (*National Brick*

*Co.* v. *County of Lake,* 9 Ill.2d 191; *Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) At the same time, courts will not interfere with a zoning classification where its reasonableness is fairly debatable, and the burden rests upon the party attacking the ordinance to establish its invalidity as to his property. *First Nat. Bank of Lake Forest* v. *County of Lake,* 7 Ill.2d 213; *County of Cook* v. *Glasstex Co.* 16 Ill.2d 72.

The shoreline of Wooster Lake is about one and one-half miles in length and the plats and testimony in the record reveal that approximately 70% of the shoreline is devoted to nonresidential uses and 30% to residential uses. Parcel 2 is located in the exact center of the western shore of the lake which, roughly speaking, is ovular in form. Moving in a counterclockwise direction from parcel 2 is a small community boat dock and beach. Next is a 41-acre tract with a lake frontage of 1225 feet owned by Charles D. Burkhart who has his residence there and also uses the land for the sale of bait, rental of boats and rental of duck blinds to hunters. Immediately adjacent to the Burkhart land is a farm property with a lake frontage of about 800 feet and for a considerable distance back from the shore this tract is swampy and covered with swamp grass.

Continuing counterclockwise, the south shore is occupied by a boys' camp and a sanitarium. The former, a 175-acre tract with a lake frontage of about 400 feet, is used throughout the year, but mostly in the summer when its campers and staff total about 300 persons. The sanitarium is a licensed rest home where male patients are treated for mental illness, senility, alcoholism and drug addiction. It is a 90-acre tract and has a lake frontage of about 1000 feet. Adjacent to the sanitarium property and directly across the lake from parcel 2, a distance of about 2000 feet, is a group of 12 single-family residences extending over a shoreline distance of about 1200 feet.

Next in order is the Rosing farm which occupies about 1000 feet of lake frontage. In one corner of this property

is a picnic grove and the Rosing Hotel, the latter structure being used for the rental of rooms and storage of boats. In addition, bait is sold and boats are rented from this tract. Immediately next to the commercial area of the Rosing farm, at the north end of the lake, is a private beach with a frontage of about 800 feet serving the residents of Indian Mounds Subdivision, a residential development across Wooster Lake Road, a traffic artery which separates the subdivision from the private beach and the lake area. This beach is used for boating, fishing, and swimming and, on summer days, may attract as many as 100 persons.

Between the community beach and parcel 2, moving on around the lake, there are in order, abutting the lake, the Biggs, Knauf and Johnson properties, each with a frontage of about 135 feet, and parcel 1. Lying back from the lake, sandwiched between the community beach and the Biggs land, is the King property. The Biggs, Johnson and King tracts, each consisting of about 4 acres, are used for residential purposes. Knauf, too, resides on his land, but also uses it for a boat-rental business.

Access to parcel 1 and parcel 2 is from a side road leading off Wooster Lake Road and, with regard to traffic hazard, a witness for defendants testified without contradiction that the effect of increased traffic through a commercial use of parcel 2 would be infinitesimal. One resident of the subdivision did testify that, since 1952, traffic on Wooster Lake Road and on one street in the subdivision had increased proportionately with the increase of commercial activity around the lake, but could not say whether all of such traffic went into the lake area.

Two expert witnesses testified for defendants that the value of residence properties nearby would not be adversely affected by defendants' use of parcel 2 because of the many similar commercial uses already in the area. Both agreed also that the highest and best use of parcel 2 was for a recreational area, and one was of the opinion that its value

was 35 to 40 percent more for recreational uses than for residential uses. No expert testimony was introduced by plaintiff to refute or contradict these witnesses.

Although plaintiff argues, as the master suggested, that the reasonableness of the residential classification for parcel 2 is at least debatable, thus forestalling judicial interference, we cannot agree that this is so. A fair appraisal of all the testimony and exhibits in the record shows that the highest and best use of the property is for a recreational area. Indeed, the lake itself and the character of the great majority of the land abutting it makes this an inevitable conclusion. Clearly, parcel 2 is not characterized by the residential uses, but by the recreational and commercial uses which predominate on the shores of the lake. (Cf. *Regner* v. *County of McHenry*, 9 Ill.2d 577.) It is not a component part of, or characterized by, the subdivision from which the lake area is separated on the north by Wooster Lake Road. No consideration of the public health, safety, welfare or morals is advanced or suggested why parcel 2 should be restricted to a residential classification, while the majority of the land similiarly situated about the lake is used for camps, beaches, sanitarium, picnic areas and the normal commercial ventures attendant to such a recreational area.

Nor do considerations of traffic or the effect of the commercial use of parcel 2 on the value of nearby residential properties justify the residential classification or make it reasonable. With regard to the latter factor, the only testimony in this record is that values of residence properties will not be affected. Moreover, it is difficult to see how the use of parcel 2 as a recreational area would do substantial damage. Extensively similar uses have prevailed on the shores of the lake for years. The damage has thus already occurred, and any further damage by an additional use of such nature would be negligible. (Cf. *Regner* v. *County of McHenry*, 9 Ill.2d 577; *People ex rel. Joseph Lumber Co.* v. *City of Chicago*, 402 Ill. 321; *Taylor* v. *Village of Glen-*

*coe,* 372 Ill. 507.) As to traffic, the only proof here is that the increase in traffic that will result from the commercial use of parcel 2 would be so insignificant and minimal as to bear little relation to the public safety. Stated otherwise, the residential classification is not necessary to the end that traffic dangers may be lessened or avoided. Cf. *Petropoulos* v. *City of Chicago,* 5 Ill.2d 270; *Exchange National Bank* v. *County of Cook,* 6 Ill.2d 419.

Finally, the evidence in the record shows that if the residential classification is enforced, the damages to defendants are considerable and the effect is confiscatory to the extent of reducing the value of their property 35 to 40 percent. No corresponding gain to the public health, welfare, safety or morals appears by which such a destruction of value may be justified. It is axiomatic that if the gain to the public is small when compared with the hardship imposed upon individual property owners, no valid basis for the exercise of the police power exists. *Mack* v. *County of Cook,* 11 Ill.2d 310; *Evanston Best & Co.* v. *Goodman,* 369 Ill. 207.

Considering all of the facts and circumstances of the case, no reasonable relation obtains between the residential classification of parcel 2 and the public health, safety, welfare or morals. Accordingly, the decree of the circuit court of Lake County is affirmed.

*Decree affirmed.*