THEODORE PECORA *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—99—2284

Opinion filed June 19, 2001.

Glenn R. Gaffney, of Glendale Heights, for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and William Motto, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs Theodore and Betty Pecora (collectively the Pecoras) appeal from the judgment of the circuit court of Cook County granting

summary judgment in favor of defendants, Cook County, Illinois and the Cook County board of commissioners (collectively the county). On appeal, the Pecoras argue that the circuit court erred in granting summary judgment against them because they had exhausted their administrative remedies; because further proceedings before the administrative agencies would be futile and would require them to pursue multiple remedies; and because the trial court incorrectly viewed their declaratory judgment action as a case in the nature of administrative review. The county argues that the Pecoras failed to exhaust their administrative remedies. The county further contends that even if the Pecoras did exhaust their administrative remedies, summary judgment was still proper because the Pecoras could not prove their case at trial. We reverse.

## BACKGROUND

The instant action has been pending in and out of the circuit court since 1981 and is almost two decades old. While the record is obviously lengthy, only the details relevant to this case need be discussed herein. Unless otherwise noted, the facts stated in this section are not in dispute.

The subject of this litigation is a real estate tract (hereinafter referred to as the property) of approximately 4.9 acres located about 150 feet east of Wildwood Avenue on the south side of Higgins Road in unincorporated Elk Grove Township in Cook County, Illinois. The Pecoras own the property as they have since 1972. The property is currently vacant and is zoned R-5 under the Cook County Zoning Ordinance. The R-5 district permits single-family homes (as well as cemeteries, schools, and recreational uses such as golf courses) with a minimum lot size of 10,000 square feet. Cook County Zoning Ordinance §§ 4.53, 4.58(1) (1984). A neighborhood of single-family homes in the municipality of Elk Grove Village stands immediately west of the property and five single-family homes in unincorporated Cook County stand immediately to the east.

On September 3, 1981, the Pecoras filed the first complaint in the case at bar seeking a declaration that the property could be lawfully used for any use permitted in the I-1 restricted industrial district. The Pecoras' first complaint alleged that they had applied to the Cook County zoning board of appeals (hereinafter the ZBA) to change the zoning of the property from the R-5 district to the I-1 district (application I).[1] The complaint averred that on May 5, 1981, the ZBA recommended to the board of commissioners of Cook County (hereinafter

---

[1]The I-1 restricted industrial district permits, among other things,

the county board) that the Pecoras' application be denied and the board denied that application on May 18, 1981.

A lengthy series of continuances and other miscellaneous motions ensued for nine years after the original complaint was filed until June 27, 1990, at which time the Pecoras were granted leave to amend their complaint. The subsequent amendment to the first complaint specified the Pecoras' proposed use of the property was as an office and warehouse facility.

On October 13, 1994, approximately four years later, the Pecoras filed a first amended complaint, which sought a declaration that the property could be developed pursuant to the uses permitted by the I-1, C-8, or C-6 (with a special use permit for a warehouse) district. The first amended complaint alleged that the ZBA had held a hearing on March 5, 1993, pursuant to the Pecoras' application to change the zoning of the property from the R-5 district to the C-8 intensive commercial district.[2] This was a new application (application II) filed following the denial of the earlier application (application I) by the county board on May 18, 1981. Application II sought reclassification to the C-8 district, unlike application I, which sought reclassification to the I-1 district. According to the first amended complaint, the ZBA recommended that application II be denied, which recommendation was adopted by the county board on June 2, 1993. The first amended complaint further alleged that on January 21, 1994, a hearing was held by the ZBA pursuant to the Pecoras' application to change the zoning on the property from the R-5 district to the C-6 automotive service district and the Pecoras' combined special use application to permit a self-storage warehouse on the property.[3] While not spelled

---

"industrial uses" (including limited manufacturing uses), "wholesale and warehouse uses," "retail business uses," "service uses" and "office uses." Cook County Zoning Ordinance § 6.13 (1984).

[2]The C-8 intensive commercial district permits "retail business uses," "service uses," "office uses," and "warehouse uses" but does not permit the wide range of "industrial uses" permitted in the I-1 district. Cook County Zoning Ordinance § 5.83 (1984).

[3]The C-6 automotive service district permits "retail uses" and "service uses" (Cook County Zoning Ordinance § 5.63 (1984)), although there are far fewer specific uses enumerated within those categories in the C-6 district than there are in those two categories in the C-8 district or the I-1 district, both of which also permit "retail" and "service uses." Compare Cook County Zoning Ordinance § 5.63 (1984), with Cook County Zoning Ordinance §§ 5.83, 6.13 (1984). Warehouses are only permitted as a special use (Cook County Zoning Ordinance § 5.64(7)(a) (1984)), requiring the issuance of a special use permit (Cook County Zoning Ordinance § 13 (1984)) by the county.

out in the pleadings, these allegations refer to still a third application (application III) seeking reclassification to the C-6 district with a special use permitting a warehouse, which was filed after the denial of the second application on June 2, 1993. The application was denied by the county board on July 14, 1994.

On November 22, 1994, the Pecoras voluntarily withdrew their first amended complaint and filed their second amended complaint. A copy of this complaint cannot be found in the record. However, there does not appear to be any dispute that the second amended complaint limited the relief sought to a declaration that the property could be developed pursuant to the C-6 automotive service district with a special use permitting a warehouse.

On November 22, 1995, the county filed a motion pursuant to section 2—619(a)(9) of the Code of Civil Procedure to dismiss the declaratory action on the grounds that the Pecoras failed to exhaust their administrative remedies. 735 ILCS 5/2—619(a)(9) (West 2000). It contended that the Pecoras' appearance before the ZBA on January 21, 1994, requesting a C-6 designation with a special use permitting a warehouse was perfunctory, as the Pecoras did not present any expert testimony regarding the suitability of a C-6 designation for the property. In support, the county attached a copy of the findings of the ZBA from the January 21, 1994, hearing wherein the ZBA recommended that the Pecoras' application for a C-6 district with a special use permitting a warehouse be denied. The ZBA found that the Pecoras had presented no expert testimony on the five factors relevant to the approval of a special use (namely, the effect of the change on the general welfare, the effect on nearby property, the effect on the development of surrounding property, the adequacy of facilities and utilities and ingress and egress) and that no conclusion could thus be reached with respect to those factors. As an additional ground in support of the contention that there was a failure to exhaust administrative remedies, the movant contended that the forgoing application to the ZBA was ineffective because it was filed during the pendency of the circuit court proceedings. The movant averred that one could not simultaneously proceed to seek relief from the courts before the conclusion of the administrative action.

On December 5, 1995, the court granted the motion to dismiss, stating:

> "Defendant's motion to dismiss is granted. Plaintiffs failed to exhaust their administrative remedies. This action is remanded back to the Cook County Zoning Board of Appeals. This cause is held in abeyance pending an administrative hearing before the Cook County Zoning Board of Appeals and further determination by the Cook County Board."

Approximately one year later, on December 15, 1996, the Pecoras filed their third amended complaint again seeking a declaration that the property could be developed in accordance with the requirements of the C-6 district with a special use permitting a warehouse. Apparently following the dismissal of the second amended complaint on December 5, 1995, for failure to exhaust and the attendant "remand" by the trial court to the ZBA, the Pecoras returned to the ZBA and made a fourth application (application IV) seeking for the second time before the ZBA reclassification of the property to the C-6 district with a special use permitting a warehouse. Upon the denial of application IV, the Pecoras filed their third amended complaint alleging that on April 26, 1996, following the Pecoras' return to the ZBA, a hearing was held before the ZBA pursuant to their request for reclassification of the property from the R-5 district to the C-6 district with a special use permitting a warehouse. According to the third amended complaint, on September 26, 1996, application IV was denied by the county board presumably pursuant to the recommendation of the ZBA.

The county filed a motion to dismiss the third amended complaint under section 2—615 of the Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000). In its motion the county contended that the allegations of the third amended complaint were insufficient to state a cause of action. Specifically, the county contended that the third amended complaint did not allege with sufficient specificity the nature and size of the Pecoras' proposed development of the property. In response, the Pecoras filed a fourth amended complaint on February 28, 1997. The fourth amended complaint was similar in all respects to the third amended complaint, except that it made additional factual allegations regarding the nature of the Pecoras' proposed warehouse facility.

On February 1, 1999, after the fourth amended complaint was filed, the county moved for summary judgment alleging that the Pecoras had failed to exhaust their administrative remedies. In support, the county averred that with respect to application IV, the Pecoras did not present any evidence to the ZBA to establish that their special use of a warehouse would have adequate utilities, drainage and other necessary facilities. The Pecoras denied that allegation and in support of their denial, they attached documents and record excerpts from the transcript[4] of the hearing on April 26, 1996. These included the

---

[4]While a transcript of the April 26, 1996, hearing is in the common law record, the record does not appear to contain a copy of the ZBA's findings regarding the application (application IV) discussed at that hearing.

notarized application for a special use (application IV) submitted in advance of the April 26, 1996, hearing.[5]

On April 8, 1999, the court granted the motion for summary judgment. In granting the motion, the trial judge stated that "[t]his case has two aspects *** [f]irst of all exhaustion and secondly, whether the process was arbitrary, unreasonable and capricious." The court then found that the Pecoras had failed to exhaust their administrative remedies, stating:

> "With respect to exhaustion, I think that the Plaintiff has done a great deal of work. I think its fallen short of what the Board needed in order to make a decision, and the Court finds that there has been a failure to exhaust. But beyond that, the teachings of the *City of Carbondale* case say that the police power[ ] [is] an[ ] attribute of sovereignty, and its not to be disturbed merely where there is a difference of opinion with a regulatory decision as to its wisdom, necessity and expediency. And the unmistakable weight of presumption in favor of the Board's decision was certainly present."

The court then went on to discuss the second issue:

> "Now the Court has already found that there's been an inadequate administrative presentation, but even to the extent that the presentation was adequate, it seems to me that there is no showing that the process was unreasonable, arbitrary and capricious."

The court noted that there is residential development to the east and the west of the property. The court then found that the Pecoras had failed to show "that the process or the result was unreasonable, arbitrary and capricious."

On May 7, 1999, the Pecoras filed a motion to vacate that judgment which the trial court denied on June 1, 1999.[6] This appeal followed.

## ANALYSIS

On appeal the county makes two arguments in support of the chancellor's findings. First, the county urges that the Pecoras cannot simultaneously pursue their declaratory action in court while their case in front of the administrative agency is still pending. Secondly, the county urges that the Pecoras did not exhaust their administrative remedies by reason of the fact that they did not adequately present a full case to the ZBA. The Pecoras deny that they have failed to exhaust

---

[5]The application does not reveal the date on which it was filed with the ZBA; however, it does contain a signature date of January 5, 1996.

[6]The Pecoras attached to that motion documents from the April 26, 1996, hearing before the ZBA and a complete transcript of that hearing.

their administrative remedies. They further contend that even if their administrative remedies have not been exhausted, they fall within two exceptions to the rule that administrative remedies must be exhausted; namely, that any further administrative proceedings would be futile and that they should not be required to pursue multiple remedies.

We first address the county's contention that the Pecoras failed to exhaust their administrative remedies because they were seeking judicial relief and administrative relief simultaneously. For the reasons discussed below, we disagree with either contention.

•1 Generally, in a zoning dispute where the plaintiff contends that "the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, *** judicial relief is appropriate only after available administrative remedies have been exhausted." *Bright v. City of Evanston*, 10 Ill. 2d 178, 185, 139 N.E.2d 270, 274 (1956). "The *Bright* rule *** is *** an expression of judicial policy prompted by the circumstance that zoning is legislative and administrative in nature, not judicial, and which is aimed at providing the local authority an opportunity to correct error and to settle disputes locally before there is judicial intervention." *County of Lake v. MacNeal*, 24 Ill. 2d 253, 259, 181 N.E.2d 85, 89 (1962).

The county principally relies on the decision of our supreme court in *Northwestern University v. City of Evanston*, 74 Ill. 2d 80, 383 N.E.2d 964 (1978), for the proposition that you cannot maintain an action for declaratory relief while simultaneously maintaining a pending action before the ZBA. In *Northwestern*, our supreme court held that where a property owner files a court action challenging the application of a zoning ordinance to his property while his application for administrative relief is still pending before the local zoning authorities, the property owner has not exhausted his administrative remedies. *Northwestern*, 74 Ill. 2d at 87-88, 383 N.E.2d at 968. Under *Northwestern*, such is the case even where the administrative action is concluded before the conclusion of the court action. *Northwestern*, 74 Ill. 2d at 89, 383 N.E.2d at 969. The facts in *Northwestern* disclose that historically there was a long-standing dispute between the university and the city regarding a city ordinance that prohibited professional athletic events at the university's Dyche Stadium. The university had previously engaged in a pattern of behavior whereby it would sue the city over its zoning ordinance in advance of a professional athletic event; obtain a temporary injunction allowing the event to take place; and then dismiss the lawsuit against the city as moot after the event took place. Under the operative facts pending before the *Northwestern* court, the university filed an application for a variance

with the Evanston ZBA seeking to allow professional athletic contests on November 21, 1975. After the aforesaid application was filed but before an administrative hearing was held, the university filed a complaint in the circuit court of Cook County seeking a declaration that the prohibition on professional athletics on the property was unconstitutional. Subsequently, the administrative hearing was held and administrative relief was denied, before any judgment was entered in the court action.

The court stated that the "dispositive fact" of the case was that *when the suit was filed* "Northwestern's petition for an amendment to the ordinance and its application for a variance were both pending before the zoning authorities, which, indeed, had not yet held hearings on the merits." *Northwestern*, 74 Ill. 2d at 88, 383 N.E.2d at 968. The court held that "[u]nder these circumstances, the university cannot be said to have exhausted its administrative remedies *at the time this suit was filed.*" (Emphasis added.) *Northwestern*, 74 Ill. 2d at 88, 383 N.E.2d at 968.

The court went on to hold that the exhaustion requirement may not be satisfied retroactively. In explaining the rationale behind its holding, the court stated:

> "Nor does the fact that the local zoning authorities and the city council denied Northwestern's petition and application after the initiation of this lawsuit justify us in holding that the university exhausted its local remedies retroactively ***. *** [S]uch a holding would have pernicious consequences as a precedent. It would in effect be a holding that a party may pursue administrative and judicial remedies simultaneously so long as the administrative proceedings are concluded before there has been a hearing on the merits in the lawsuit. Such a holding would allow a party to file a lawsuit and then satisfy the exhaustion requirement by putting in a perfunctory appearance before the local bodies, reminding them of the pendency of the suit, on which the party's real effort was focused." *Northwestern*, 74 Ill. 2d at 89, 383 N.E.2d at 969.

Contrary to the county 's contentions, we find that the facts of the case at bar are manifestly different from the facts in *Northwestern* and that consequently the rational behind the court's decision in *Northwestern* does not apply to the instant case.

Unlike the facts in *Northwestern*, the record in this case shows that at no time did the Pecoras simultaneously request the same relief from the ZBA and the courts. All of the relief requested by way of declaratory judgment followed the denial of that relief by the ZBA. In this case, unlike the facts in *Northwestern*, the lawsuit initially seeking a declaration compelling reclassification to the I-1 district was filed

only after the claim for that relief was denied by the ZBA. This lawsuit was first filed on September 3, 1981, after the Pecoras were denied reclassification to the I-1 district by the county board on May 18, 1981, and after a hearing was held by the ZBA on this request (application I) on January 16, 1981. Thus, *at the time the suit* was first filed no administrative proceedings for such relief (reclassification to the I-1 district) were pending.[7]

While during the pendency of the declaratory judgment action, the Pecoras returned to the ZBA a second time seeking reclassification to the C-8 district (application II) and a third time seeking reclassification to the C-6 district with a special use permitting a warehouse (application III), their declaratory action was still confined exclusively to obtaining the I-1 classification which had already been denied by the ZBA at the time their lawsuit was filed. The Pecoras did not amend their complaint seeking declaratory relief for reclassification to the C-8 or C-6 district until after their administrative applications for those remedies were denied by the county board.

The second and third applications to the administrative agency, which requested reclassification to the C-8 district and the C-6 district with a special use, respectively, requested distinct remedies different than the request for reclassification to the I-1 district, as shall be more fully discussed below. The second and third administrative proceedings on March 5, 1993 (application II requesting reclassification to the C-8 district), and on January 21, 1994 (application III requesting reclassification to the C-6 district with a special use permitting a warehouse), respectively, both terminated in a denial of the requested relief by the county board on June 2, 1993, and July 14, 1994, respectively, before the Pecoras' complaint was again amended to seek declaratory relief from those denials. Thus, at no time did the Pecoras attempt to seek any specific judicial relief before they had received a final determination on their respective applications seeking such relief from the county board.[8]

•2 The rule is clear that the exhaustion of remedies rule does not

---

[7]The record is unclear as to when application II and application III were filed, but in any event, application II requested reclassification to the C-8 district and application III requested reclassification to the C-6 district, neither of which was the relief sought in the initial complaint in the declaratory judgment action. The Pecoras did not amend their complaints to seek reclassification to the C-6 or C-8 districts until after their applications for that relief were denied by the county board.

[8]The Pecoras ultimately dropped their claims for reclassification to the C-8 or I-1 district and pursued only their claim for reclassification to the C-6 district with a special use permitting a warehouse.

require exhaustion of multiple remedies. In other words, where several forms of alternative relief are available at the administrative level, the rule does not require that all of the alternative forms of relief be pursued and denied before the property owner may proceed in court. *Kuney v. Zoning Board of Appeals*, 162 Ill. App. 3d 854, 857, 516 N.E.2d 850, 852 (1987). Consequently, an application to an administrative agency for an alternative but distinct remedy need not be exhausted in order to request relief from the court for the original remedy. *Kuney*, 162 Ill. App. 3d at 857, 516 N.E.2d at 852. Each zoning classification represents an independent remedy at the administrative level and thus, under the multiple-remedy rule, a property owner may proceed to court once he has been denied administrative reclassification to one of the potential districts without first seeking administrative reclassification to the others.

•3 As we have noted above, the I-1 district, the C-8 district, and the C-6 district permit different uses of land within their boundaries (compare Cook County Zoning Ordinance § 6.13 (1984), with Cook County Zoning Ordinance § 5.83 (1984), and Cook County Zoning Ordinance §§ 5.63, 5.64 (1984)) and consequently are alternatives to each other and constitute different remedies. *Kuney*, 162 Ill. App. 3d at 857, 516 N.E.2d at 852 ("when multiple remedies exist before the same zoning board and one remedy has been exhausted," the property owner need not exhaust the other remedies to proceed to court). See also *Liebling v. Village of Deerfield*, 21 Ill. 2d 196, 199, 171 N.E.2d 585, 586 (1961) (once a property owner has been denied reclassification to a different district by the administrative agency, he need not also apply for a variation in order to exhaust his administrative remedies and proceed to court); accord *Wheeling Trust & Savings Bank v. Village of Mount Prospect*, 64 Ill. App. 3d 1038, 1041-42, 382 N.E.2d 128, 130 (1978). *Cf. American National Bank & Trust Co. of Chicago v. City of Chicago*, 130 Ill. App. 2d 24, 27-28, 264 N.E.2d 847, 849 (1970). This is all the more true with respect to the special use which the Pecoras sought in conjunction with their effort to obtain reclassification to the C-6 district. See *Kuney*, 162 Ill. App. 3d at 857, 516 N.E.2d at 852 (specifically holding that the property owner need not exhaust his right to obtain a special use at the administrative level before he may proceed with a declaratory judgment action).

Thus under the multiple-remedies rule, there was no requirement upon an applicant to exhaust all available remedies as a prerequisite to seeking declaratory relief for the administrative denial of any single one.

Thus, in seeking, respectively, administrative reclassification to the C-8 district (application II) and subsequently to the C-6 district

(application III) during the pendency of the declaratory action focused on reclassification to the I-1 district, the Pecoras were not simultaneously pursuing the same administrative remedy that they were pursuing in their declaratory action.[9] When the Pecoras amended their complaint to seek declaratory relief for reclassification to the C-8 district and the C-6 district with a special use, their administrative actions for such relief had by then fully terminated.

●4 In reaching this conclusion we are not unmindful of the fact that application IV, seeking for the second time administrative reclassification to the C-6 district with a special use, occurred after the first amended complaint seeking declaratory relief for C-6 reclassification was filed and while that amended action was still technically pending. However, upon analysis this does not alter our conclusion.

First, while the administrative proceedings seeking reclassification for the second time to the C-6 district with a special use permit were technically proceeding simultaneously with pending court proceedings asking for the same relief, namely, the relief sought pursuant to an earlier administrative proceeding on application III, it is clear that the declaratory judgment action predicated on the denial of application III was not being actively pursued in court during this period of purported "remand." With respect to that period, the court had entered an order stating that the case was "dismissed" and the cause held "in abeyance." While there is some question as to what the effect of this order is, there can be no question that, at the very least, it meant that legal proceedings would completely cease until after the conclusion of the further administrative hearings (application IV), at which point the court proceedings would start over as if a new suit had been filed.

Had the trial judge simply dismissed the case with prejudice on December 5, 1995, rather than holding it in "abeyance," the Pecoras would have had clear sailing to file an entirely new application for C-6 relief (application IV) and thus an action arising from the denial of that new application. *Cf.* Cook County Zoning Ordinance §§ 13.98, 13.10—10 (1984) (if an application for relief is denied by the county board it may be filed again later); *Hazelton v. Zoning Board of Appeals*, 48 Ill. App. 3d 348, 351-52, 363 N.E.2d 44, 47 (1977) ("it is well established that a prior determination by an administrative body is not *res judicata* in subsequent proceedings before it"); *Seno v. Franke*, 16 Ill. App. 2d 39, 46, 147 N.E.2d 469, 473 (1957). Consequently, the mere fact that the court held this case in abeyance should not alter

---

[9]As we discuss below, the proceedings on application IV did not begin until after the second amended complaint was dismissed, and concluded before the third and fourth amended complaints were filed.

this result. In holding this case in abeyance, it is clear that the court did not contemplate ongoing litigation concerning application III once it would be superceded by the denial of application IV. Thus at no time was the court action seeking declaratory relief from the denial of application IV pending during the pendency of the administrative action seeking relief pursuant to application IV since the court action was initiated only after application IV was denied at the administrative level.

Even more overriding, the hearing before the ZBA pursuant to application IV was not commenced by the parties of their own volition but was initiated pursuant to an explicit directive of the trial judge. When the Pecoras filed their declaratory judgment action and initially amended their complaint seeking a declaration of entitlement to use their property in accordance with requirements of the C-6 district and a special use permit for a warehouse, all administrative action concerning that remedy had already terminated. The Pecoras did not then proceed on their own to seek to reapply for the same relief in still another administrative action. As previously noted, they then had full recourse to seek declaratory judgment for such relief without any procedural necessity to reapply for that same administrative relief already denied them. Cf. *Liebling v. Village of Deerfield*, 21 Ill. 2d 196, 199, 171 N.E.2d 585, 586 (1961) ("the plaintiff sought the appropriate local remedy, and having been denied relief, he may have access to the courts without also making application for a variation"); *Wheeling Trust & Savings Bank v. Village of Mount Prospect*, 64 Ill. App. 3d 1038, 1041-42, 382 N.E.2d 128, 130 (1978) (plaintiff need not request the same relief for a second time in the guise of a variation in order to exhaust his administrative remedies). Rather, it was the trial court that then directed that such a reapplication take place. Under these circumstances there is no risk that a party would "file a lawsuit and then satisfy the exhaustion requirement by putting in a perfunctory appearance before the local bodies, reminding them of the pendency of the suit, on which the party's real effort was focused," which was the rationale used in *Northwestern* for barring simultaneous proceedings. *Northwestern*, 74 Ill. 2d at 89, 383 N.E.2d at 969. Furthermore, to hold otherwise would allow a trial judge to unilaterally prevent a property owner from exhausting his administrative remedies.

The county next argues that the Pecoras failed to exhaust their administrative remedies because they only made a perfunctory appearance before the ZBA at the April 26, 1996, hearing. In support, the county contends that no evidence was presented on the issue of whether the Pecoras' proposed development would have adequate drainage. We disagree.

•5 We find that the second hearing on a request for a C-6 designation was not a perfunctory appearance before the ZBA by the Pecoras. The transcript of the April 26, 1996, hearing and the accompanying exhibits do not support the view that the Pecoras' participation in that hearing was perfunctory. Three witnesses testified in detail about the project and its impact on the neighborhood, including Theodore Johnson, a land planner and a traffic engineer. The Pecoras also presented, among other documents, a feasability study and percolation tests indicating the feasability of installing a septic system for the live-in manager of the proposed facility.

Furthermore, the Pecoras presented evidence on the factors that must be established before the ZBA can recommend that a special use be granted to a property owner. Cook County Zoning Ordinance § 13.10—7 (1984). Those standards are:

"1. That the establishment, maintenance or operation of the special use will not be detrimental to or endanger the public health, safety or general welfare.

2. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood.

3. That the establishment of the special use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district.

4. That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided.

5. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets.

6. That the special use shall in all other respects conform to the applicable regulations of the Ordinance and other applicable County regulations, except as such regulations may in each instance be modified by the Board of Commissioners pursuant to the recommendation of the Zoning Board of Appeals." Cook County Zoning Ordinance § 13.10—7 (1984).

The Pecoras presented evidence on each of the forgoing factors.

Theodore Johnson, a certified planner, testified that the proposed development of the self-storage warehouse facility would have a positive impact on the general welfare because a need for such a facility exists in the area. He stated that the development would not be injurious to the enjoyment of other property, noting that a landscaped buffer zone would exist between the development and homes on adjoining property. He further averred that it would not impede normal and orderly development in the area because the trend of development in

the area is toward nonresidential development. He also testified that adequate utilities, roads, drainage and other necessary facilities were being provided and that the development complied with all other regulations.

David Miller, a traffic engineer, then testified that the development would generate during peak hours five cars per hour in the morning and nine per hour in the afternoon. On the weekend, it would generate 11 per hour. In comparison, a McDonald's restaurant would generate 120 cars per hour at its peak time. Miller also testified that residents in the adjoining homes would not be able to see the traffic on the property.

The evidence presented by the Pecoras at the April 26, 1996, hearing distinguishes this case from *Northwestern*. In *Northwestern* the court indicated that the plaintiff university made a perfunctory appearance before the ZBA. In the facts of *Northwestern*, several hearings were held before the ZBA on the university's request for a variance. The university refused to appear at several of the hearings. At the hearings in which the university did participate, its participation was limited to submitting a written "statement of facts" with a letter asking for a continuance and having its attorney insist before the board that the zoning ordinance was unconstitutional. The university refused to present facts or arguments to the board showing how its proposal for a variance met the requirements for such a variance in the local zoning ordinance. *Northwestern*, 74 Ill. 2d at 85, 383 N.E.2d at 967. This state of affairs is in stark contrast to the amount of evidence presented by the Pecoras to the ZBA in the case at bar. While the ZBA herein may have held that the proof was not enough to obtain the relief requested, this is a far cry from saying that the appearance was perfunctory and only used to choreograph an agency appearance in order to obtain relief in the courts.[10]

The county next argues that even if the Pecoras exhausted their administrative remedies, summary judgment should be sustained on the merits. The county contends that in order to prevail at trial the

---

[10]We do not mean to suggest by this holding that the evidence presented on the special use standards by the Pecoras at the ZBA hearing is sufficient to enable them to prevail on those standards in a court of law. As we noted above, our supreme court's decision in *Northwestern* indicates that an administrative presentation is perfunctory if it is a sham. *Northwestern*, 74 Ill. 2d at 85, 89, 383 N.E.2d at 967, 969; *cf.* American Heritage Dictionary 922 (2d Coll. ed. 1982) (defining "perfunctory" as "[d]one or acting routinely with little interest or care"). Merely because the Pecoras' presentation rose above this minimal level of sufficiency does not mean that the evidence presented therein is sufficient for other purposes.

Pecoras must prove all of the factors enumerated in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411 (1960), as well as the factors enumerated in the Cook County Zoning Ordinance as requirements for the granting of a special use permit (Cook County Zoning Ordinance § 13.10—7 (1984)). The county thus contends that since the Pecoras have not presented any evidence indicating that their facility has or will be provided with adequate drainage (one of the special use factors), the Pecoras cannot prove a *prima facie* case and summary judgment against them must stand.

The Pecoras argue in response that the motion for summary judgment did not contend that they are unable to prove a *prima facie* case and that it only contended that they have not exhausted their administrative remedies. The Pecoras also argue that even if the motion for summary judgment went beyond exhaustion, they provided sufficient evidence on the issue of adequate drainage to survive summary judgment on that issue. The Pecoras also contend that the affidavit furnished by the county with its motion for summary judgment was insufficient and thus apparently argue that the county has not met its burden of production as the movant in a summary judgment motion. Consequently, the Pecoras claim that since the county failed to satisfy its burden of production, then that burden of production never shifted to the Pecoras and they were entitled to stand on their pleadings with regard to the issue of drainage. We agree with that position.

●6 The burden of proof and the initial burden of production in a motion for summary judgment lie with the movant. *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998). "Only if [the movant] satisfies its initial burden of production does the burden shift to [the respondent] to present some factual basis that would arguably entitle [it] to a favorable judgment." *Rice*, 294 Ill. App. 3d at 805, 690 N.E.2d at 1070.

> "A defendant who moves for summary judgment may meet its initial burden of production in two ways. [Citation.] The first is similar to the way a plaintiff would establish his right to summary judgment: by affirmatively showing that some element of the case must be resolved in defendant's favor. A defendant who uses that method is required to prove something it would not be required to prove at trial; at trial, the burden would be on plaintiff to prove the element, not on defendant to disprove it." *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355, 726 N.E.2d 1171, 1174 (2000).

In such a motion, the "party opposing [the] motion for summary judgment may rely solely upon his pleadings to create a material question of fact until the movant supplies facts that would clearly entitle him to judgment as a matter of law." *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 846, 649 N.E.2d 493, 495 (1995).

The second method by which a defendant/movant may meet initial burden of production, recognized by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 275, 106 S. Ct. 2548, 2553-54 (1986), is by "pointing out to the *** court *** that there is an absence of evidence to support the nonmoving party's case." While Illinois courts have held that a "[d]efendant's burden is certainly reduced in a *Celotex*-type motion," the Illinois Appellate Court has suggested that "[t]he Illinois cases may require the defendant to do more than 'point out' the absence of evidence." *Hutchcraft*, 312 Ill. App. 3d at 355, 726 N.E.2d at 1174. Accord 4 R. Michael, Illinois Practice § 40.3, at 272 (1989) ("'a mere recital in the defendant's affidavit" is insufficient to carry the defendant's burden of showing that the plaintiff cannot prove his case).

We find that *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 737 N.E.2d 662 (2000), is squarely on point. In *Williams* the defendant-movant made a *Celotex*-type motion for summary judgment which asserted without affidavit that plaintiffs had no expert testimony to establish that the defendant-movant's negligence was the proximate cause of the plaintiff's injury. The court held that the defendant-movant thus "failed to establish that plaintiffs could not produce an admissible expert opinion on the issues of Covenant's [defendant-movant's] breach of the standard of care and proximate cause of Williams' [plaintiff's] injuries, and Covenant made no showing that it was clearly entitled to judgment as a matter of law on those issues." *Williams*, 316 Ill. App. 3d at 690, 737 N.E.2d at 669. The court thus held that the "plaintiffs could have relied on their complaint to create an issue of material fact on those issues." *Williams*, 316 Ill. App. 3d at 690, 737 N.E.2d at 669.

•7 In the case at bar, the affidavit that accompanied the county's motion for summary judgment does not state that "the plaintiffs could not produce an admissible expert opinion on the issue" of adequate drainage. Furthermore, the motion does not even allege as much. Rather, the affidavit and the motion merely argue that no drainage information was presented before the county board. Such an argument does not suggest that adequate drainage evidence could not be presented at trial, and the Pecoras would not be limited to evidence presented to the ZBA in a trial of this case. *Smith v. County Board*, 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459 (1980) (in a declaratory

judgment action "the validity of the ordinance does not depend on the evidence presented at the hearings before the Zoning Board or the County Board, but is determined in an independent action"); *Knor v. County of Madison*, 151 Ill. App. 3d 767, 773, 502 N.E.2d 1063, 1067 (1986) ("transcripts of hearings before the zoning board of appeals or the county board are not admissible in declaratory judgment actions"). Thus the county did not meet its burden of production and the Pecoras are thus entitled to rely on their pleadings to create an issue of fact on the issue of adequate drainage. Since their fourth amended complaint alleges that "[a]dequate utilities, access roads, drainage and other necessary facilities are available for the self-service storage facility," summary judgment cannot be affirmed on the basis of this issue, as on the basis of the preceding issues.[11]

In remanding[12] the instant case for further proceedings we are not unmindful that we may be extending this case for yet another life span. We cannot, however, compromise the integrity of the legal issues raised herein in deference to the age of the case before us.

For the reasons discussed above, the judgment of the circuit court of Cook County granting summary judgment in favor of the defendant is reversed and this cause is hereby remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

CAHILL, P.J., and McBRIDE, J., concur.

---

[11]Due to the page limitations imposed under revised Supreme Court Rule 23 (166 Ill. 2d R. 23), we are compelled to delete from the published portion of this opinion our discussion of the county's contention that summary judgment is warranted on the merits because the presumption of validity which attaches to the R-5 zoning ordinance could not have been overcome. Our discussion of this issue is included in the full, unabridged text of this opinion which is on file with the clerk of this court under docket No. 1—99—2284.

[12]Because we find that the Pecoras have sufficiently exhausted their administrative remedies we need not address the Pecoras' other arguments that they need not exhaust their remedies because any further administrative proceedings would be futile and that the trial court incorrectly viewed this case as being in the nature of an administrative review action when in fact it is a declaratory judgment action.